OPINION OF THE COURT
HARDIMAN, Circuit Judge.
This appeal requires us to consider the question of waiver. The issue arises in the context of a criminal case in which Defendant Maurice Ray Dupree prevailed on a motion to suppress evidence after the District Court determined he had been seized without reasonable suspicion. In the District Court, the Government argued that one issue was dispositive: whether Dupree *726 was actually seized when he was first grabbed by police. Before this Court, the Government concedes that point but urges reversal for two new—and quite different—reasons. I would hold that both of these new arguments were waived. Although Judge Fisher does not share my view regarding waiver, he would affirm the District Court on the merits. Accordingly, we will affirm.
I.
A.
On the evening of January 16, 2008, Philadelphia Police Officers Brian Mabry and Steven Shippen were on patrol in a marked police cruiser when they received a report of gunshots near 10th and Oxford Streets. The shooter was described as a black male, approximately five feet, eight inches tall, wearing blue jeans and a black, hooded sweatshirt. A later report indicated that the suspect had fled eastward on Oxford Street.
The officers drove approximately one mile to the vicinity of the shooting. As they crossed Marshall Street, the officers noticed a man, later identified as Dupree, slowly riding a bicycle toward Oxford Street. Although Dupree fit the suspect’s description, Shippen did not stop because the reports said nothing about the suspect riding a bicycle.
Moments later, Mabry mentioned that Dupree resembled the suspect’s description, prompting Shippen to return to Marshall Street. As the officers approached Dupree, he continued to ride his bicycle slowly in their direction. After Shippen stopped the cruiser, Mabry alighted from the vehicle, grabbed the approaching Dupree by the arm, and asked: “Can I talk to you for a minute?” Although Mabry’s grasp stopped Dupree’s movement, Dupree initially remained perched on the bicycle.
At this point, the parties’ otherwise consistent versions of events diverge. According to the Government, Dupree twisted away, “slammed” his bicycle into Mabry’s legs, and fled on foot. Dupree concedes that he broke free and fled, but denies intentionally throwing his bicycle at Mabry. Instead, he claims the bicycle inadvertently slid into Mabry as he dismounted.
Regardless of how Dupree extricated himself from Mabry’s grasp, he fled on foot and the officers gave chase. With the officers close behind, Dupree circled a home on Marshall Street several times before pulling a loaded, .357 caliber revolver from his waistband and discarding it into a flowerpot. Mabry stopped to recover the weapon while Shippen pursued and eventually arrested Dupree after a brief struggle.
B.
Following his arrest, Dupree was charged with one count of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). Dupree moved to suppress the gun, contending that because Mabry lacked reasonable suspicion to grab him on Marshall Street, the weapon was the fruit of an unlawful seizure. The Government opposed the motion, arguing that under the Supreme Court’s decision in California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), Dupree was not seized until after the chase, when Shippen subdued him. Because Dupree discarded the gun before he was seized, argued the Government, the abandoned firearm was not subject to suppression.
The District Court rejected the Government’s argument. The Court first observed that “a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful,” constitutes a Fourth Amendment seizure. United States v. Dupree, *727 No. 08-280-1, 2009 WL 1475276, at *3 (E.D.Pa. May 27, 2009) (quoting United States v. Brown, 448 F.3d 239, 245 (3d Cir.2006)). Accordingly, the District Court held that Dupree was seized unlawfully when Mabry first grabbed him on Marshall Street. The District Court then quoted United States v. Coggins, 986 F.2d 651, 653 (3d Cir.1993), and held: “when the abandonment of property is precipitated by an unlawful seizure, that property also must be excluded.” The District Court’s holding was consistent with “the Government’s concession that if the initial stop of Dupree is found to have been a seizure, then the gun must be suppressed as the seizure’s illegal proceeds.” Dupree, 2009 WL 1475276, at *6.
The Government filed a motion for reconsideration, framing the issue for the District Court as follows: “the suppression issue in this case turns on a single question—was ... Dupree seized, within the meaning of the Fourth Amendment, when ... Mabry grabbed Dupree for a mere two seconds before Dupree broke away and attempted to flee?” The Government then reprised the argument it made at the suppression hearing, viz., that under Hodari D., the Fourth Amendment was not implicated because Dupree was not seized until well after he dropped the firearm. The Government also argued—for the first time and in the alternative—that Dupree committed an assault when he intentionally “slammed” his bicycle into Mabry. Even if Mabry’s initial grab did constitute a seizure, contended the Government, Dupree’s new crime gave the officers probable cause to arrest and thereby purged the taint of Mabry’s unlawful seizure. The District Court denied the motion for reconsideration.
II.
The Government now appeals the District Court’s orders granting Dupree’s motion to suppress and denying the Government’s motion for reconsideration. The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we exercise jurisdiction under 18 U.S.C. § 3731.
The Government’s appeal—in diametric opposition to the argument it twice made before the District Court—begins with the concession that Mabry’s initial grab of Dupree was an illegal seizure under the Fourth Amendment. Notwithstanding the illegal seizure, the Government urges reversal for two reasons: (1) even if Dupree’s flight was prompted by Mabry’s unlawful seizure, the policies underlying the exclusionary rule and the fruit-of-the-poisonous-tree doctrine do not require suppression of evidence voluntarily discarded by a fleeing defendant; and (2) Dupree’s alleged assault of Mabry provided probable cause to arrest and thereby purged the taint of the unlawful seizure. Although the Government’s second argument was raised in its motion for reconsideration in the District Court, its principal argument was never raised prior to this appeal. Dupree asserts that both arguments were waived. Alternatively, he argues that both fail on the merits.
We examine the District Court’s factual findings for clear error and review de novo the District Court’s legal conclusion that Dupree’s firearm must be suppressed. See United States v. Johnson, 592 F.3d 442, 447 (3d Cir.2010).
III!
I begin with the well-established proposition that arguments not raised in the district courts are waived on appeal.[1] *728 See Steagald v. United States, 451 U.S. 204, 209, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981). This general principle applies fully to criminal cases involving motions to suppress. See id.; United States v. Stearn, 597 F.3d 540, 551 n. 11 (3d Cir.2010). Thus, when a party seeks reversal of a suppression ruling on appeal, any arguments not raised in the district court are waived absent a showing of good cause, and plain error review does not apply.[2] United States v. Rose, 538 F.3d 175, 184 (3d Cir.2008); see also Fed.R.Crim.P. 12(e). Just as a defendant may not introduce new “theories of suppression” on appeal that were never argued below, United States v. Lockett, 406 F.3d 207, 212 (3d Cir.2005), the Government is “subject to the ordinary rule that an argument not raised in the district court is waived on appeal[,]” Stearn, 597 F.3d at 551 n. 11 (citing Steagald, 451 U.S. at 209, 101 S.Ct. 1642).
This raise-or-waive rule is essential to the proper functioning of our adversary system because even the most learned judges are not clairvoyant. See United States v. Nee, 261 F.3d 79, 86 (1st Cir.2001). Thus, we do not require district judges to anticipate and join arguments that are never raised by the parties. See United States v. Griffiths, 47 F.3d 74, 77 (2d Cir.1995). Instead courts rely on the litigants not only to cite relevant precedents, but also to frame the issues for decision. See id. (“The government was required to offer some argument or development of its theory. It failed to do so, and has therefore waived the issue.”).
Moreover, “[a] fleeting reference or vague allusion to an issue will not suffice to preserve it for appeal[.]” In re Ins. Brokerage Antitrust Litig., 579 F.3d 241, 262 (3d Cir.2009). Rather, a party “must unequivocally put its position before the trial court at a point and in a manner that permits the court to consider its merits.” Shell Petroleum, Inc. v. United States, 182 F.3d 212, 218 (3d Cir.1999). Mindful of the important purposes that animate our waiver jurisprudence, I turn now to Dupree’s contention that the Government waived the two arguments it presses on appeal.
A.
The Government’s principal argument is that the exclusionary rule and the fruit-of-the-poisonous-tree doctrine do not automatically apply following a Fourth Amendment violation. According to the Government, application of the exclusionary rule requires us to compare the substantial social costs that attend the suppression of probative physical evidence against the benefits in deterring Fourth Amendment violations. Arguing that suppression of Dupree’s weapon would offer only minimal deterrence while imposing considerable so *729 cial costs, the Government urges us to find the exclusionary rule inapplicable where, as here, a defendant who has been illegally seized subsequently breaks free from police and voluntarily discards evidence while fleeing.
The Government’s reasoning relies heavily on recent Supreme Court cases that, when read together, arguably suggest as much. See, e.g., Herring v. United States, — U.S.-, 129 S.Ct. 695, 700-03, 172 L.Ed.2d 496 (2009); Hudson v. Michigan, 547 U.S. 586, 591-93, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006). As the Government argues, Herring cautions us to apply the exclusionary rule only when its potential for deterring future police misconduct outweighs the social costs incurred by suppressing the evidence. See 129 S.Ct. at 700-03. Whether the fruit-of-the-poisonous-tree doctrine requires suppression in a given case can turn on similar variables. See Hudson, 547 U.S. at 593, 126 S.Ct. 2159.
Irrespective of the merits of the Government’s argument, it suffers from a fatal defect: it was never presented to the District Court. It neither appears in the Government’s briefs, nor was raised at the suppression hearing. Indeed, when initially opposing Dupree’s suppression motion in the District Court, the Government argued only that suppression was not required because Mabry’s initial grab of Dupree did not constitute an unlawful seizure. Whether for strategic reasons or through inadvertence, the Government did not argue that even if Mabry’s grab of Dupree was an unlawful seizure, the fruit-of-the-poisonous-tree doctrine did not apply.
At oral argument, the Government attempted to finesse its failure to raise this argument in the District Court by conceding that its language “could have been more precise.” The Government also conceded that although cases such as Herring and Hudson are central to the legal argument it now presses on appeal, neither case was cited to the District Court. This omission is telling.
To understand the argument the Government actually made to the District Court, I review what counsel for the Government said at the suppression hearing. There, the Government argued exclusively that suppression was not required because Mabry’s grab of Dupree did not constitute a seizure. In the words of the prosecutor:
But, now a question that we have before us ... is whether or not the defendant was seized [by Mabry] on Marshall Street. If we can say that at this point in time the defendant was arrested, the case ends at that point in time ... The problem that we have here is that the arrest did not occur on Marshall Street, but occurred [later].
If [Dupree] is grabbed and he flees you don’t have, whatever term you want to use, custody, seizure, or arrest, you don’t have it. If you don’t have it, then you don’t have the suppression issue that ... is before us....
Because the officers had probable cause to arrest Dupree after seeing him discard the gun during the chase, argued the Government, Shippen’s subsequent tackle and arrest of Dupree was reasonable under the Fourth Amendment. At no point, however, did the Government argue that the exclusionary rule should not apply even if Dupree had been seized by Mabry because the costs of suppression would outweigh any deterrent benefit.[3]
*730 Nor did the Government raise its new argument when seeking reconsideration in the District Court. Instead, the Government’s motion for reconsideration essentially restated its unsuccessful argument that Dupree was not seized until he was tackled and arrested by Shippen. As the Government’s motion for reconsideration straightforwardly asserted: “the suppression issue in this case turns on a single question—was ... Dupree seized, within the meaning of the Fourth Amendment, when ... Mabry grabbed Dupree for a mere two seconds before Dupree broke away and attempted to flee?” Though the Government now concedes that Dupree was seized when Mabry initially grabbed him, it no longer thinks that the “suppression issue in this case turns on a single question”—or at least not the same “single question” that it presented to the District Court. Having framed the legal issue so squarely below, the Government may not now paint a different picture on appeal.[4]
The Government responds to Dupree’s waiver argument by noting that it cited Hodari D. repeatedly in the District Court. But the Government ignores the fact that it cited Hodari D. only to support its argument that Dupree was not seized when grabbed by Mabry. Now, by contrast, the Government admits that Dupree was seized and instead relies on Hodari D. to argue that the exclusionary rule should not apply.[5]
It is elementary that Fourth Amendment analysis typically proceeds in three stages. First, we ask whether a Fourth Amendment event, such as a search or a seizure, has occurred. See United States v. Smith, 575 F.3d 308, 312-13 (3d Cir.2009). Next, we consider whether that search or seizure was reasonable. Id. If it was not, we then determine whether the circumstances warrant suppression of the evidence. See Herring, 129 S.Ct. at 700.
*731 Before the District Court, the Government cited Hodari D. only at the first stage, when it argued that no seizure had occurred before Dupree discarded the firearm. On appeal, the Government now cites Hodari D. at the final stage, arguing that the exclusionary rule should not apply despite Mabry’s unreasonable seizure of Dupree. The Government thus cited Hodari D. in the District Court at a wholly different stage of the Fourth Amendment analysis.
As the Government recognized at oral argument, simply citing a case in the Dis-
trict Court is not sufficient to raise all arguments that might flow from it. See Nee, 261 F.3d at 86. To preserve the argument that it now makes on appeal, the Government had to do more than broadly reference Hodari D,[6] Instead, it had to give the District Court the opportunity to consider the argument it now makes, i.e., whether the policies underlying the exclusionary rule demonstrate that it should apply where, as here, an illegally seized defendant breaks free and discards evidence while fleeing. Because it did not do so, the Government failed to preserve its argument for appeal.[7]
*732 In sum, the Government now presents a novel and interesting legal argument. Regardless of the merits of this argument, however, it was never raised in the District Court. Accordingly, it was waived. See Fed.R.Crim.P. 12(e) (providing that “a party waives any [motion to suppress] defense, objection, or request not raised by the deadline” set by the district court). In Rose, we held that waiver of a suppression argument may be excused only for good cause shown. 538 F.3d at 184-85. Because the Government has made no attempt to show good cause, I would hold that it waived its policy argument that the District Court should not have applied the exclusionary rule to suppress Dupree’s firearm.
B.
The Government argues in the alternative that the firearm need not be suppressed because Dupree’s “intervening and volitional act of throwing his bicycle at Mabry after he was seized created probable cause to arrest” Dupree for assault. The Government does not argue that it presented this independent-crime theory to the District Court when it initially opposed Dupree’s suppression motion. Instead, the Government notes that it raised this argument only in its motion for reconsideration.
Dupree responds by citing United States v. Thompson, where the Eleventh Circuit held that a suppression argument made by the Government for the first time in a motion for reconsideration was waived because the Government provided no justification for its failure to raise the argument in a timely fashion. 710 F.2d 1500, 1504 (11th Cir.1983). As discussed previously, we recognized a similar rule in Rose, holding that under Federal Rule of Criminal Procedure 12(e), “a party waives any [motion to suppress] defense, objection, or request not raised by the deadline” set by the district court absent a showing of good cause. 538 F.3d at 184-85.
Here, the Government waived its independent-crime argument by failing to raise it before the District Court ruled on Dupree’s motion to suppress—i.e., by the “deadline” set by Rule 12(e). There is no indication that the Government made any attempt to demonstrate good cause for its failure to raise this argument when it sought reconsideration in the District Court. Nor has the Government argued good cause on appeal. Thus, to the extent that the Government appeals the District Court’s order granting Dupree’s motion to suppress, this independent-crime argument was waived, and the Government has given us no basis to excuse its waiver.
The Government has also appealed the District Court’s order denying its motion for reconsideration, however. Although the Government failed to raise its independent-crime theory when initially opposing suppression, it preserved the argument in the context of its appeal from the District Court’s separate order denying its motion for reconsideration.
We review the denial of a motion for reconsideration for abuse of discretion. See Max’s Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 673 (3d Cir.1999). The purpose of such a motion is to correct a clear error of law or to prevent a manifest injustice in the District Court’s original ruling. Id. at 677; see also Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir.1985). Such motions “are granted for ‘compelling reasons,’ such as a change in the law which reveals that an earlier ruling was erroneous, not for addressing arguments that a party should have raised earlier.” Solis v. Current Dev. Corp., 557 F.3d 772, 780 (7th Cir.2009) (internal citations omitted). Though “[m]otions to reconsider empower the court to change course when a mistake has *733 been made, they do not empower litigants ... to raise then[1] arguments, piece by piece.” Id.
As discussed herein, the District Court granted Dupree’s motion to suppress after it found that he was seized without reasonable suspicion when Officer Mabry grabbed him. Nothing about the Government’s newly raised independent-crime argument makes this initial ruling by the District Court clearly erroneous as a matter of law. Nor has the Government cited any new evidence. Rather, the District Court’s decision to suppress Dupree’s weapon was legally correct in light of the facts, law, and arguments raised by the parties at the time of the original motion to suppress. That the Government belatedly articulated an alternative basis for admitting the evidence does not impugn the District Court’s original ruling. Accordingly, the District Court’s denial of the Government’s motion for reconsideration was not an abuse of discretion.
IV.
In this appeal, the Government proffers two alternative bases for reversing the District Court’s suppression of Dupree’s firearm. The Government’s principal argument reflects a thoughtful consideration of the Supreme Court’s more recent exclusionary rule jurisprudence. We undoubtedly will have occasion to consider that argument in the future, but not in a case, such as this one, where it was never presented to the District Court. For the reasons stated herein and in Judge Fisher’s concurring opinion, we will affirm the District Court’s orders granting Dupree’s motion to suppress and denying the Government’s motion for reconsideration.

. Case law reflects some confusion as to how to characterize suppression arguments that were never made to a district court. Some decisions refer to unraised arguments as “waived,” while others deem them "forfeited.” Compare, e.g., United States v. Stearn, 597 F.3d 540, 551 n. 11 (3d Cir.2010) with, *728 e.g., United States v. Amuny, 767 F.2d 1113, 1122 (5th Cir.1985). As the Supreme Court has explained, "[wjaiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.’ ” United States v. Olano, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (quoting Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). Under this definition, the failure to raise a suppression argument in a district court would seem to constitute a "forfeiture.” In United States v. Rose, however, we acknowledged Olano’s teachings but nonetheless characterized suppression arguments not raised below as "waived” in light of Congress’s post-Olano revisions to Rule 12 of the Federal Rules of Criminal Procedure, which retained the waiver language. 538 F.3d 175, 183-84 (3d Cir.2008).

. Of course, a different scenario is presented when a party asks us to affirm a district court’s suppression ruling because we may affirm for any reason supported by the record. See United States v. Agnew, 407 F.3d 193, 196 (3d Cir.2005).

. Notably, the District Court's memorandum opinion does not mention the policy-based argument the Government presses on appeal. See United States v. Dupree, No. 08-280-1, 2009 WL 1475276 (E.D.Pa. May 27, 2009).

. The Government’s concession on appeal that Mabry's grab was a seizure is understandable in light of the Supreme Court’s statement in Hodari D. that the "laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful’’ constitutes a seizure. 499 U.S. 621, 626, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991); see also United States v. Brown, 448 F.3d 239, 245 (3d Cir.2006).

. The language from Hodari D. on which the Government now relies provides:
To say that an arrest is effected by the slightest application of physical force, despite the arrestee's escape, is not to say that for Fourth Amendment purposes there is a continuing arrest during the period of fugitivity. If, for example, [the police officer] had laid his hands upon Hodari to arrest him, but Hodari had broken away and had then cast away the cocaine, it would hardly be realistic to say that that disclosure had been made during the course of an arrest.
Hodari D., 499 U.S. at 625, 111 S.Ct. 1547. Based on this passage, our dissenting colleague would hold that "evidence discarded by a fleeing defendant after an unlawful seizure does not make that evidence per se inadmissible” because the evidence is not recovered during the course of the illegal arrest.
Accepting the dicta from Hodari D. at face value, additional analysis is still required to determine whether the weapon discarded by Dupree must be suppressed. The fruit-of-the-poisonous-tree doctrine applies to evidence recovered both during and as a result of a Fourth Amendment violation. See Murray v. United States, 487 U.S. 533, 536-37, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988). Thus, assuming that the seizure of Dupree terminated once he fled, we would still be required to determine whether the fruit-of-the-poisonous-tree doctrine requires suppression in this case. Judge Cowen would hold that it does not, based on the Government’s argument that the social costs of suppression in such a scenario would outweigh the exclusionary rule’s deterrent effect on future Fourth Amendment violations. I express no view on the merits of this argument because it was not raised in the District Court.

. Il is unsurprising that the Government’s mere citation to Hodari D. below did not prompt the District Court to consider sua sponte the argument the Government makes on appeal. The holding of Hodari D. involved whether the officers’ actions constituted a seizure in the first instance. See Hodari D., 499 U.S. at 626, 111 S.Ct. 1547 ("The narrow question before us is whether, with respect to a show of authority ..., a seizure occurs even though the subject does not yield.”). Because the Supreme Court found that no seizure had occurred ab initio, it had no occasion to consider whether either the seizure was reasonable or whether the exclusionary rule should apply. Thus, Hodari D. was directly relevant to the argument that the Government made to the District Court—i.e., that suppression was unwarranted because Mabry had not seized Dupree. But Hodari D.’s holding provides scant support for the Government’s broader, policy-based argument that the exclusionary rule does not apply notwithstanding Mabry's illegal seizure. Though precedents such as Herring and Hudson clearly bear on that argument, the Government candidly admitted at oral argument that it cited neither of those cases to the District Court. Thus, despite Judge Cowen's suggestion to the contrary, merely citing Hodari D. was insufficient to put the District Court on notice of the novel legal argument the Government has raised on appeal.

. Contrary to Judge Fisher’s suggestion, this waiver holding is not predicated on a finding that "the government has forfeited its right to rely on Hodari D. by virtue of its concession on appeal that Dupree, unlike Hodari, was seized at the outset of his encounter with the police.” Concurring Op. at 740. Rather, the Government forfeited its right to make a fruit-of-the-poisonous-tree argument on appeal because it never raised that argument below.
To illustrate this point, an analogy is helpful. Assume that this case instead involved statements allegedly obtained in violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The rule of Miranda applies if two requirements are met: a defendant must be (1) "in custody” and (2) subject to "interrogation” by the Government. Id. at 444, 86 S.Ct. 1602; see also United States v. Leese, 176 F.3d 740, 743 (3d Cir.1999). If the Government were to cite Miranda in the District Court solely for the proposition that Dupree was not "in custody” while eschewing any argument that he was not subject to an “interrogation,” one could not persuasively contend that the Government preserved the latter argument for appeal simply by citing Miranda in reference to the former. And like Miranda, the Fourth Amendment analysis has discrete components. Accordingly, I respectfully disagree with Judge Fisher’s suggestion that “this case is not one in which the government is ... pursuing a legal theory it wholly failed to raise below.” Concurring Op. at 740. That is precisely what the Government seeks to do here when it cites Hodari D. on appeal to argue that the exclusionary rule should not apply for policy reasons after citing the case below only to argue that Dupree was not seized.

. Unlike Judge Fisher, I am not troubled by the Government's reliance on a passage from Hodari D. that is dicta. The Supreme Court grants certiorari in fewer than 85 cases annually, and thus, provides precedent on very few issues. Accordingly, the Court's dicta is highly persuasive and should be treated as binding unless there are indications to the contrary, which in this case, there are none. As I have set forth in my dissent, the Court spoke on the precise factual setting presented by this case and instructed that suppression would not be appropriate. Under these circumstances, I do not believe that adhering to the Supreme Court’s instruction is optional.