NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4618
_____

UNITED STATES OF AMERICA,

v.

RICHARD VALENTINE,

                                    Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-09-cr-00169-001)
District Judge:  Hon. Jan E. Dubois

_____

Submitted Under Third Circuit LAR 34.1(a)
November 10, 2011

Before:  SCIRICA, SMITH, and JORDAN, *Circuit Judges*.

(Filed: November 14, 2011)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

        Richard Valentine pled guilty in the United States District Court for the Eastern

District of Pennsylvania to drug and firearm offenses.  Pursuant to his plea agreement,

Valentine was permitted to appeal the District Court's ruling denying his pre-trial motion to suppress, and on appeal, does challenge the denial of his suppression motion. Because Valentine waived the arguments he now advances to challenge the District Court's ruling, we will affirm.

## I.    Background

### A.    *The Arrest*

On November 12, 2008, Officer Joseph Gansky of the Bensalem Police Department ("BPD") was on patrol in Bensalem Township, Pennsylvania. While on patrol, he followed a car over the border into Bristol Township, and when he turned around to return to Bensalem Township, he saw a Honda Civic with dark-tinted windows pass him at a high rate of speed. He began to follow the car. Upon checking its registration, he learned that it was registered to Valentine. When Gansky pulled close behind the Honda, the driver made a quick left hand turn and drove away. Though Gansky found this activity to be suspicious, he did not pursue the car because he was still in Bristol Township, which was outside of his jurisdiction.

Less than five minutes later, when resuming patrol in Bensalem Township, Gansky observed the same Honda Civic pass in front of him, so he again pulled his patrol car behind it. Because he suspected that the car's tinted windows were unlawfully dark, and because he had previously observed the driver engage in suspicious activity, Gansky initiated a traffic stop by activating his overhead lights. Both cars turned into a parking lot in a shopping center. Valentine, who was alone in the Honda, told Gansky that he was meeting a friend at a market in the shopping center and planned to pick up a few items at

2

the market. The market, however, was closed. Valentine also told Gansky that he had a suspended driver's license, no valid insurance, and no registration for the car, but he did provide Gansky with an identification card. Gansky then ran a background check on Valentine, which indicated that he was a known offender with reports of weapons violations, domestic violence, and harassment. Gansky also checked Valentine's criminal history over the police radio and was told that Valentine had arrests for several narcotics violations and stolen firearms violations, and that he was known to flee.

As additional BPD officers began arriving on the scene, Gansky contacted his supervisor, Corporal George Price, and asked Price for permission to tow the Honda. Price granted permission after Gansky informed him that Valentine had a suspended license, no insurance, and no registration. Gansky then told Valentine that his vehicle would be towed and asked him to step out of the car so Gansky could perform an inventory search. Valentine complied.

Gansky began the search and, in the front passenger compartment, found two bottles of pills that Valentine admitted were Percocet.[1] Gansky then released a lever on the driver's side door to open the trunk, but, when the trunk opened, Valentine ran towards the trunk and slammed it shut. Gansky testified that when he advised Valentine that he needed to search the trunk pursuant to BPD inventory procedures, Valentine responded, "You can have the car, you can arrest me but you cannot search that trunk." (App. at 111.) As other officers moved Valentine away from the trunk, Gansky re-

---

[1] Percocet is a brand name for a pill that contains oxycodone.

opened it and uncovered two bags of a white powdery substance, a black digital scale with a light powder residue on it, a loaded weapon, and a loaded magazine. Valentine was then placed under arrest.

B.     *Motion to Suppress*

On March 17, 2009, Valentine was charged with possession with intent to distribute five grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1), possession of oxycodone, in violation of 21 U.S.C. § 844(a),[2] and possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). He responded by filing a motion to suppress the physical evidence seized from his vehicle and the statements he made on the night of the arrest.

At the suppression hearing on July 31, 2009, Price and Gansky testified regarding BPD's policies and procedures on vehicle impoundment and inventory searches. Regarding impoundment, Price read a document entitled "Impound of Motor Vehicles," from BPD's field training manual. That document, given to each BPD officer, provides:

> When impounding a motor vehicle whether it be for a vehicle code violation or an arrest, an inventory of the vehicle must be completed and an inventory sheet must be filled out. On this inventory sheet be sure to list any damages to the vehicle. If you feel that a vehicle needs to be towed due

---

[2] While Valentine's plea agreement references 18 U.S.C. § 844(a), and the judgment sentencing Valentine references 21 U.S.C. § 842(a), the indictment references 21 U.S.C. § 844(a). The parties are in accord in their respective briefs that possession of oxycodone is a violation of 21 U.S.C. § 844(a). We will therefore reference that statute for the purposes of this appeal.

4

to vehicle code violation [sic] you need to first get your sergeant's approval. Vehicle code infractions that may constitute impounding are: no insurance, no licensed drivers in the vehicle, or unregistered vehicle [sic].

(App. at 185.) Price further testified that, as a supervisor of a squad working on patrol, he must authorize any request to tow a vehicle. Price also stated that if a driver has no license, no insurance, and there is no licensed driver available, it was the practice of the BPD to authorize a tow. Gansky testified that it was his practice to seek his supervisor's permission to tow a vehicle if its driver had no valid insurance and no valid driver's license and there were no other licensed drivers in the car.

Both Gansky and Price also testified regarding BPD inventory search procedures. Price said that the purpose of an inventory search is to note any damage to a vehicle and to return or record any items of value. He went on to say that the only limitation on police officers in conducting an inventory search is that they cannot break into a locked compartment which can only be opened by force. On cross-examination, Price acknowledged that the document discussing inventory and impoundment does not indicate how to properly conduct an inventory search, and that Gansky "could have [conducted the inventory search in] any way he felt appropriate at the time." (App. at 69.) Gansky testified, however, that, as part of his training, he was taught how to conduct an inventory search and would "basically just [conduct] a search of the vehicle … looking for items of value [or] damages to the vehicle and then noting it on a[n] inventory log." (App. at 92.) Gansky further testified that an inventory search would allow him to go into a trunk unless it is locked and can only be opened by force.

5

After the suppression hearing, on August 6, 2009, Valentine filed a memorandum of law in support of the motion to suppress. In that memorandum, Valentine argued that Gansky conducted an unlawful stop because he did not have reasonable suspicion of a window-tint violation. He further contended that the impoundment and inventory search of the car were unlawful because there was no written policy regarding the scope of an inventory search and because the decision to impound and inventory was based on an improper investigatory motive.

The District Court denied the motion to suppress. First, the Court concluded that the traffic stop was lawful because Gansky did have reasonable suspicion that the vehicle's windows were tinted so darkly as to be in violation of Pennsylvania law. Second, the Court concluded that, although Gansky did have an investigatory motive, his decision, and Price's authorization, to impound the Honda was reasonable because it was done in accordance with BPD policy and Price credibly "testified that his approval of Officer Gansky's impound request was based solely on the fact that Valentine was stopped while driving on a suspended license and without insurance." (App. at 23.)

After the denial of his motion, Valentine entered a plea of guilty to all counts in the indictment. The plea agreement permitted Valentine to file a direct appeal of the District Court's order denying the suppression motion. He was sentenced to 240 months' imprisonment and eight years' supervised release.

This timely appeal of the suppression ruling followed.

## II.  Discussion[3]

On appeal, Valentine argues that Gansky's failure to obtain authorization for the impoundment of the vehicle from a sergeant rendered the impoundment unreasonable and a violation of the Fourth Amendment, and that Gansky's search of the trunk went beyond the scope of the written inventory policy,[4] thus rendering the trunk search unreasonable and a violation of the Fourth Amendment.  However, Valentine acknowledges in his brief that his counsel did not raise in the District Court either of those two arguments.

Ordinarily, we review "the District Court's denial of a motion to suppress for clear error as to the underlying factual findings and exercise[] plenary review of the District Court's application of the law to those facts."  *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002).  However, the government argues that Valentine has waived the arguments that he now presses on appeal.  Valentine contends that we should still review those arguments for plain error, and, in support of that contention, he cites Federal Rule of Criminal Procedure 52(b), which provides that "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention."  Fed. R. Crim. P. 52(b).

"[I]t is well settled that arguments asserted for the first time on appeal are deemed to be waived and consequently are not susceptible to review in this Court absent

---

[3] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

[4] For the purposes of this issue on appeal, Valentine's reference to the written inventory policy appears to be to the one paragraph document entitled "Impound of Motor Vehicles."

exceptional circumstances." *United States v. Rose*, 538 F.3d 175, 179 (3d Cir. 2008) (quoting *United States v. Lockett*, 406 F.3d 207, 212 (3d Cir. 2005)). Federal Rule of Criminal Procedure 12(b)(3)(C) specifically states that a motion to suppress evidence must be raised before trial, Fed. R. Crim. P. 12(b)(3)(C), and Rule 12(c) permits a court to "set a deadline for the parties to make" such a motion. Fed. R. Crim. P. 12(c). Absent good cause, Rule 12(e) provides that "[a] party waives any Rule 12(b)(3) defense, objection, or request not raised by the deadline the court sets ." Fed. R. Crim. P. 12(e); *see Rose*, 538 F.3d at 177 ("In our Court, suppression issues raised for the first time on appeal are waived absent good cause under Rule of Criminal Procedure 12."); *see also United States v. Dupree*, 617 F.3d 724, 728 (3d Cir. 2010) ("[W]hen a party seeks reversal of a suppression ruling on appeal, any arguments not raised in the district court are waived absent a showing of good cause… ." (citing *Rose*)).

We will not consider Valentine's new arguments. Contrary to his claimed right to plain error review, the waiver provision of Rule 12 "trumps Rule 52(b)'s plain error standard in the context of motions to suppress." *Rose*, 538 F.3d at 176. Thus, Valentine's reliance on Rule 52(b) is misguided. Moreover, Valentine has not demonstrated good cause for delaying his arguments until appeal.[5] Accordingly, we

---

[5] The only explanation made by Valentine in his brief that could be construed as an argument for good cause is his statement that his attorney for this appeal is different than his attorney at the suppression hearing, whose motion to withdraw was granted after Valentine filed a timely notice of appeal. But the decision to proceed with a different attorney on appeal does not, in itself, demonstrate "good cause." *Cf. Rose*, 538 F.3d at 184-85 (holding that an appellant who offered no explanation of why he did not raise his issues on appeal at his suppression hearing, other than the fact that he was proceeding *pro se*, did not demonstrate "good cause").

conclude that, under Rule 12 of the Federal Rules of Criminal Procedure, Valentine has waived the only issues he now raises on appeal.

## III. Conclusion

For the foregoing reasons, we will affirm.