**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4401
_____

GOVERNMENT OF THE VIRGIN ISLANDS

v.

LAUGHTON CLARKE,
                            Appellant

_____

APPEAL FROM THE APPELLATE DIVISION OF THE DISTRICT
COURT OF THE VIRGIN ISLANDS
(D.C. Crim. App. No. 04-cr-00085-001)
District Judge: Honorable Curtis V. Gomez
District Judge: Honorable Raymond Finch
_____

Submitted Under Third Circuit LAR 34.1(a)
May 16, 2014
_____

Before: RENDELL, FUENTES, and GREENAWAY JR., *Circuit Judges*.

(Filed: July 10, 2014)
_____

OPINION
_____

FUENTES, *Circuit Judge*:

A jury convicted Laughton Clarke of rape, first degree unlawful sexual contact, first degree assault, child abuse, and incest. The Superior Court of the Virgin Islands sentenced Clarke to twenty-five years' incarceration. He appealed his conviction to the Appellate Division of the District Court of the Virgin Islands, which affirmed the Superior Court. Clarke now appeals the Superior Court's denial of his motion to suppress DNA evidence and his conviction for second degree aggravated rape. For the reasons set forth below, we will affirm the Appellate Division.

## I.

In August 2002, Clarke lived with his sixteen year old daughter, Shermaine Clarke. Sometime during the early part of that month, Clarke attacked Shermaine while they were watching television in Shermaine's room. Clarke laid on top of Shermaine and removed his clothes. He then had sexual intercourse with her while she screamed and struggled.

On August 30, 2002, Clarke entered Shermaine's room and had sexual intercourse with her a second time. Once again, Shermaine screamed and struggled to get away, to no avail. Later that day, Shermaine called a friend's uncle, Alfonso Rogers. Shermaine told Rogers that she had just been raped by her father, and asked him to retrieve her from her home. Rogers told Shermaine that he was unable to get her but that he would call the police instead. Rogers called 911 and reported the rape. He also informed the dispatcher that Clarke possessed a gun.

2

Four police officers responded to the report, arriving at the Clarke residence in pairs. Shermaine met the police officers outside the home. Clarke, at this time, was standing halfway behind a partially open door, in view of the officers, watching the interaction between Shermaine and the officers. Shermaine identified Clarke as her father and informed the officers that Clarke had "just had sex with her." App'x 65. The officers ordered Clarke to exit the home and subsequently arrested him. Following the arrest, Clarke and Shermaine were taken to Roy Schneider Hospital. There, a doctor collected samples of Clarke's blood and vaginal swabs from Shermaine for DNA analysis. Comparison of the samples confirmed that Clarke had had sex with Shermaine.

Clarke was charged with fourteen counts of rape, unlawful sexual contact, incest, child abuse, and assault under various Virgin Islands statutes. Relevant to this appeal, Clarke was charged with five counts of aggravated second degree rape under 14 V.I.C. § 1700a(a). That statute provides in relevant part:

> Whoever perpetrates an act of sexual intercourse or sodomy with a person who is under eighteen years but thirteen years or older and not the perpetrator's spouse, or by force, intimidation, or the perpetrator's position of authority over the victim is used to accomplish the sexual act is guilty of aggravated rape in the second degree . . . .

14 V.I.C. § 1700a(a).

Before trial, Clarke moved to suppress the DNA evidence collected, arguing that it was acquired as a result of an unlawful arrest. The Superior Court[1] denied the motion.

---

[1] When this case was decided, the trial court was called the Territorial Court of the Virgin Islands. As of October 29, 2004, the trial court's name was changed to Superior Court of

3

Subsequently, Clarke was convicted of all charges by a jury. Clarke was sentenced to twenty-five years' imprisonment for second degree aggravated rape with multiple shorter sentences running concurrently.

On appeal to the Appellate Division, Clarke argued, among other things, that: (1) his initial arrest was in violation of his Fourth Amendment rights and the DNA evidence was the result of an unlawful search that should have been suppressed; and (2) § 1700a(a) was unconstitutionally vague and overbroad. The Appellate Division affirmed the Superior Court on both issues.[2]

## II.

Clarke raises two issues in his instant appeal. First, he claims that there was no probable cause to justify his arrest, so that the DNA evidence collected shortly thereafter should have been suppressed as inadmissible fruit of the poisonous tree. Second, Clarke contends that § 1700a(a) is unconstitutionally vague and overbroad and should be struck down. We address these issues in turn.[3]

---

the Virgin Islands. *Pichardo v. Virgin Islands Comm'r of Labor*, 613 F.3d 87, 90 n.1 (3d Cir. 2010).

[2] Clarke also argued that some of his convictions violated the double jeopardy clause of the Constitution, and that the evidence presented at trial was insufficient to establish paternity for his conviction of incest. The Appellate Division held the Superior Court erred on both grounds, vacating the incest convictions and remanding the case for resentencing on the multipicitous charges. These holdings are not at issue here.

[3] The Appellate Division's decision is final and this court has jurisdiction pursuant to 28 U.S.C. § 1291 and 48 U.S.C. § 1613a(c). Subsequent to Clarke's appeal of the Superior Court's judgment, the Supreme Court of the Virgin Islands assumed appellate jurisdiction over cases heard by the Superior Court. 5 V.I.C. § 32. However, this court retains

4

A.

We first address Clarke's argument that the Superior Court erred in failing to suppress his DNA because the police arrested him without probable cause.[4] "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). To determine "whether probable cause existed for an arrest, we must take a 'totality-of-the-circumstances approach.'" *Reedy v. Evanson*, 615 F.3d 197, 211 (3d Cir. 2010) (quoting *Illinois v. Gates*, 462 U.S. 213, 230 (1983)). Under this approach, we examine whether "the facts and circumstances within [the officers'] knowledge . . . were sufficient to warrant a prudent man in believing that [the suspect] had committed or was committing an offense." *Kossler v. Crisanti*, 564 F.3d 181, 194 (3d Cir. 2009) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)) (alterations in original). "[U]ncertainty and apprehension" or mere suspicion of criminal conduct is insufficient to establish probable cause without objective, supporting evidence. *United States v. Myers*, 308 F.3d 251, 261 (3d Cir. 2002). However, "[probable cause] does not 'require the same type of specific evidence . . . as would be needed to support a conviction.'" *Reedy*, 615 F.3d at 211(quoting *Adams v. Williams*, 407 U.S. 143, 149 (1972)). Where a defendant is arrested without probable cause, the fruit of that arrest

appellate jurisdiction for appeals filed prior to the creation of the Supreme Court of the Virgin Islands. 48 U.S.C. § 1613a(d).

[4] "We review the denial of a suppression motion for clear error as to the underlying facts, and exercise[] plenary review as to the legality of the denial in the light of properly found facts." *United States v. Leveto*, 540 F.3d 200, 211 n.9 (3d Cir. 2007).

must be suppressed at trial. *United States v. Dupree*, 617 F.3d 724, 730 n.5 (3d Cir. 2010).[5]

We have no trouble in concluding that the arresting officers had probable cause to seize Clarke. The arresting officers responded to a 911 call reporting an alleged rape by a perpetrator in possession of a firearm. This call itself goes a long way towards establishing probable cause. *See United States v. Johnson*, 592 F.3d 442, 451 (3d Cir. 2010). Moreover, when the officers arrived at the Clarke residence, Shermaine informed them that she had been raped by Clarke, whom she then identified to the officers. A victim's accusation and identification of her own father as her attacker is sufficiently reliable identification to constitute probable cause. *See Sharrar v. Felsing*, 128 F.3d 810, 818 (3d Cir. 1997) ("When a police officer has received a reliable identification by a victim of his or her attacker, the police have probable cause to arrest."), *abrogated on other grounds by Curley v. Klem,* 499 F.3d 199 (3d Cir. 2007).

While it is not entirely clear from his briefs, Clarke may be arguing that his arrest was also improper because it was carried out without a warrant. *See* Appellant's Br. at 11. Because Clarke did not raise this issue in the lower courts we review for plain error. *United States v. Vosburgh*, 602 F.3d 512, 531 (3d Cir. 2010).

While a warrantless arrest inside an individual's home is "presumptively unreasonable," *United States v. Coles*, 437 F.3d 361, 365 (3d Cir. 2006), an arrest warrant is not required when the defendant is apprehended in a public place. *United*

---

[5] The taking of DNA samples following a lawful arrest constitutes a lawful search. *Maryland v. King*, 133 S. Ct. 1958, 1980 (2013). Accordingly, if the arrest was lawful, so too was the collection of Clarke's DNA.

*States v. Burton*, 288 F.3d 91, 98 (3d Cir. 2002). It is settled law that a defendant standing

on the threshold of his dwelling is in a "public" place for Fourth Amendment purposes.

*United States v. Santana*, 427 U.S. 38, 42 (1976). Here, the record suggests that Clarke

was arrested in the doorway of his home while "peeping out" at the officers. App'x 65.

Therefore, it was not plain error for the Superior Court to conclude that Clarke was not

entitled to the increased Fourth Amendment protection afforded to individuals in their

homes, and that no search warrant was required to effectuate his arrest.[6]

Because the officers had probable cause to arrest Clarke, and because it was not

plain error to conclude that the arresting officers did not need a warrant to arrest Clarke,

the DNA evidence obtained shortly after Clarke's arrest was admissible. Accordingly, the

Appellate Division properly affirmed the trial court's denial of Clarke's motion to

suppress the DNA evidence.

B.

Clarke next claims that § 1700a(a) is unconstitutionally overbroad because it

penalizes consensual and benign sexual relationships between co-workers, and that it is

unconstitutionally vague because it prohibits "two mutually exclusive acts," i.e. statutory

rape and sexual acts perpetrated by force, intimidation, or by position of authority.

---

[6] In the alternative, it would not have been plain error for the Superior Court to conclude the arresting officers were faced with an exigent circumstance justifying a warrantless arrest. *See Myers*, 308 F.3d at 265 (holding that 911 call reporting domestic dispute and child telling officer that a man with a gun was inside fighting with her mom constituted exigent circumstances that justified warrantless entry into home).

Appellant's Br. at 14. Clarke did not raise these arguments at trial, so we review for plain error. *Vosburgh*, 602 F.3d at 531.

The overbreadth doctrine aims to prevent the "chilling" of speech, and to that end departs from the traditional rules of standing. *Serv. Emps. Int'l Union, Local 3 v. Municipality of Mt. Lebanon*, 446 F.3d 419, 422-23 (3d Cir. 2006). If a defendant's conduct is not constitutionally protected itself, he may still facially challenge a statute if it has the potential to cause others "to refrain from constitutionally protected speech or expression." *McCauley v. Univ. of the Virgin Islands*, 618 F.3d 232, 238 (3d Cir. 2010). "Resort to this doctrine is 'strong medicine that is not to be casually employed.'" *United States v. Stevens*, 533 F.3d 218, 247 (2008) (quoting *Los Angeles Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 39 (1999)). For this reason, "a statute's overbreadth [must] be *substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Stevens*, 533 F.3d at 247 (quoting *New York v. Ferber*, 458 U.S. 747, 772 (1982)).

Clarke purports to bring a facial overbreadth challenge, but he does not argue that § 1700a(a) implicates any First Amendment rights. Clarke's argument fails on this front. *See United States v. Tykarsky*, 446 F.3d 458, 473 (3d Cir. 2006). In any event, § 1700a(a) is not overbroad. Despite Clarke's protestations to the contrary, it does not prohibit consensual sex between co-workers simply because one is in a position of authority. Rather, the statute prohibits sexual acts between co-workers only when a "position of authority over the victim is *used* to accomplish the sexual act." 14 V.I.C. § 1700a(a) (emphasis added). Section 1700a(a) clearly does not criminalize "a substantial amount of

constitutionally protected conduct." *Gibson v. Mayor of Wilmington*, 355 F.3d 215, 226 (3d Cir. 2004).

Clarke also claims § 1700a(a) is void for vagueness. The Constitution's due process guarantee requires criminal statutes to be written with a certain level of specificity. *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999). A criminal law may be unconstitutionally vague for one of two reasons. *United States v. Fullmer*, 584 F.3d 132, 152 (3d Cir. 2009). First, if it "fail[s] to 'give [a] person of ordinary intelligence a reasonable opportunity to know what is prohibited.'" *CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 631 (3d Cir. 2013) (second alteration in original). Second, if it provides inexplicit standards that "authorize[] or even encourage[] arbitrary and discriminatory enforcement." *Stevens*, 533 F.3d at 249.

The fact that § 1700a(a) defines rape as a sexual act taking place under one of a series of circumstances does not render the statute unconstitutionally vague. Criminalizing conduct by listing offense elements in the alternative is a common statutory device. *See Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013) (discussing the use of "divisible statutes" in the context of the Armed Career Criminal Act). The plain language of § 1700a(a) clearly criminalizes sexual intercourse when either: (1) the victim is between the ages of 13 and 18; *or* (2) the victim is any age if the sexual act is accomplished by: (a) force; (b) intimidation; or (c) the perpetrator's use of their position of authority. 14 V.I.C. § 1700a(a). This is a clear and unambiguous prohibition of specific conduct that provides constitutionally sufficient notice to the public and constitutionally sufficient guidance for law enforcement and the judiciary. *Cf.*

9

*Tykarsky*, 446 F.3d at 465 (holding that 18 U.S.C. § 2422(b), which prohibited "using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, [to] knowingly persuade[], induce[], entice[], or coerce[] any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity," is not impermissibly vague).

Section 1700a(a)'s provisions do not reach constitutionally protected rights and the statute provides clear and unambiguous notice of the conduct it does prohibit. It was not error, let alone plain error, for the Appellate Division to hold that § 1700a(a) is neither unconstitutionally vague or overbroad.

III.

For the reasons set forth above, we will affirm the judgment of the Appellate Division.