ALD-324                                                          NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1724
_____

TERRY WALKER,
                                        Appellant

v.

STEVEN GLUNT, Superintendent; DORETTA CHENCHARICK,
Supt. Asst./Grievance Coordinator, SCI Houtzdale; CORRECTIONAL
OFFICER DIEHL; CORRECTIONAL OFFICER UNCLES; LIEUTENANT GLASS;
SHIRLEY MOORE SMEAL, Executive Deputy Secretary of (DOC); JOHN E.
WETZEL, Secretary of (DOC); CAPTAIN BRAUMBAUCH; HEATHER MOORE,
Mail Room Supervisor;  PENNSYLVANIA DEPARTMENT OF CORRECTIONS,
(D.O.C.) SCI Houtzdale

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 3-13-cv-00249)
District Judge:  Honorable Kim R. Gibson

_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B) or
Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
June 30, 2016
Before:  AMBRO, SHWARTZ and NYGAARD, Circuit Judges

(Opinion filed: July 11, 2016)
_____

OPINION*
_____

PER CURIAM

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Appellant Terry Walker appeals from a district court order granting Appellees' motion for summary judgment. Because we conclude that this appeal presents no substantial question, we will summarily affirm the District Court's judgment. See 3d Cir. LAR 27.4; I.O.P. 10.6.

I.

Walker, a prisoner at SCI – Frackville acting pro se, filed this action under 42 U.S.C. § 1983 against Correctional Officer Diehl, Correctional Officer Uncles, Lieutenant Glass, and Captain Braumbaugh.[1] Walker alleged that, while incarcerated at SCI – Houtzdale, they violated his rights provided by the Eighth Amendment by failing to protect him when they transferred another inmate, Christian Guzman, into his cell knowing that Guzman had threatened to harm him. Walker's claims stem from an incident that occurred on August 13, 2013. That morning, Guzman allegedly threatened to harm Walker for being a snitch and implied that Diehl was going to assist him. Walker alleged that Diehl and Uncles heard this, but nonetheless transferred Guzman into Walker's cell and uncuffed Guzman, allowing him to assault Walker, who was handcuffed behind his back, before returning Guzman to his cell. Walker also alleged that Glass subsequently accused him of fighting with Guzman and that Glass, Diehl, and Uncles tried to conceal Guzman's attack by not allowing medical personnel to take any pictures or x-rays of Walker and by not providing him with any medical care other than seven stiches he received on his right arm.

---

[1] The other defendants named in the Amended Complaint were dismissed from the action pursuant to a motion to dismiss.

Appellees filed a motion for summary judgment. The Magistrate Judge recommended granting the motion on all claims and the District Court did so over Walker's objections. Walker filed a timely motion for reconsideration, which the District Court denied. Walker now appeals both District Court orders.

II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. Our review of orders granting motions for summary judgment is plenary. See McGreevy v. Stroup, 413 F.3d 359, 363 (3d Cir. 2005). The standard of review for a denial of a motion for reconsideration is abuse of discretion. United States v. Dupree, 617 F.3d 724, 732 (3d Cir. 2010). We will summarily affirm the District Court's orders. See 3d Cir. LAR 27.4 and I.O.P. 10.6.

As an initial matter, in adopting the Magistrate Judge's thorough Report and Recommendation, the District Court correctly held that Walker had failed to produce evidence suggesting that Captain Braumbaugh was personally involved or had actual knowledge of, and acquiesced to, the commission of any alleged constitutional violation. We agree.

Here, Walker only broadly alleged that Braumbaugh received his "request slip" after the incident, but did not respond. Walker has not alleged Braumbaugh's knowledge and acquiescence with the required particularity, nor has Walker offered evidence tending to show that Braumbaugh had the necessary level of involvement in the underlying allegedly unconstitutional conduct for the claim against him to survive summary judgment. See Ashcroft v. Iqbal, 556 U.S. 642, 677 (2009); Rode v. Dellarciprete, 845

3

F.2d 1195, 1207-08 (3d Cir. 1988) (holding that a plaintiff must allege "with appropriate particularity" that the defendants "have personal involvement in the alleged wrongs [which] . . . can be shown through allegations of personal direction," and noting that the governor's awareness of plaintiff's grievances filed with his office of administration is insufficient to establish personal involvement in, and actual knowledge of, the conduct complained of by plaintiff). Put more simply, even if one were to assume an incident did occur, there is no evidence that Braumbaugh was personally involved in the violation of Walker's constitutional rights.

The District Court also properly granted summary judgment to Glass, Diehl, and Uncles on the ground that Walker had failed to exhaust his administrative remedies relative to those claims. The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that, before bringing claims with respect to prison conditions under 42 U.S.C. § 1983 or any other federal law, prisoners must first exhaust the administrative remedies that are available. In particular, an inmate must comply with all established procedural requirements of the grievance review process in order to fully exhaust an issue. Woodford v. Ngo, 548 U.S. 81, 83-84 (2006); Booth v. Churner, 206 F.3d 289, 292 n.2 (3d Cir. 2000).

The District Court correctly found that Walker did not exhaust his administrative remedies. Evidence of record establishes that Walker did not sign his grievance, an important procedural requirement set by the institution. Moreover, specific evidence shows that the grievance was signed by another inmate known for being litigious. Walker's response is to assert that the prison officials are not handwriting experts.

4

However, scientific expertise is not necessary in this instance.  The finding was upheld on multiple levels of grievance review and Walker put forth no actual evidence to contradict it at summary judgment.[2]  Walker acknowledges that this was the basis for the rejection of his grievance, as opposed to some other reason without basis in fact.  In short, Walker cannot escape the grievance he submitted and the signature it bore.  By filing a procedurally defective grievance and appeal, Walker failed to exhaust his administrative remedies.  Summary judgment was therefore properly granted on Walker's claims against Glass, Diehl, and Uncles.[3]

III.

For these reasons, we conclude that this appeal presents no substantial question.  Accordingly, we will summarily affirm the District Court's order granting the defendants summary judgment on Walker's complaint.  See 3d Cir. L.A.R. 27.4; I.O.P. 10.6.  We will also affirm the denial of Walker's motion for reconsideration.  Given our disposition of this appeal, we grant Walker's Motion for Leave to Proceed on Original Record and deny his Motion for Appointment of Counsel.

---

[2] On appeal, Walker essentially takes issue with the process employed by prison officials.  For example, he argues that the defendants have never properly explained where prison policy makes an improper signature a reason for rejecting a grievance.  However, by making the signature a required element of the grievance form, prison officials did just that.

[3] Summary judgment was also properly granted on the claim that Glass, Diehl, and Uncles "conspired" to have Walker's grievance rejected.  "To constitute a conspiracy, there must be a 'meeting of the minds.'"  Startzell v. City of Philadelphia, 533 F.3d 183, 205 (3d Cir. 2008) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 (1970)).  Walker offered nothing more than conclusory statements that these officials conspired to reject his grievance; no evidence suggests that they agreed, plotted, or even discussed doing so.