NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 16-4229
_____

UNITED STATES OF AMERICA

v.

KEENA J. STANTON
a/k/a Lloyd Jackson
a/k/a Travis Jackson
a/k/a Keenan Stanton

Keena J. Stanton,
                    Appellant

_____


On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal No. 2-11-cr-00057-001)
District Judge:  Honorable Nora B. Fischer

Submitted Under Third Circuit L.A.R. 34.1(a)
July 10, 2018

BEFORE:  SHWARTZ, NYGAARD, and RENDELL, *Circuit Judges*


(Opinion filed: August 16, 2018)

_____

OPINION[*]

_____

NYGAARD, *Circuit Judge.*

Keena Stanton appeals the District Court's denial of his motion to suppress evidence obtained from an apartment where officers arrested him.[1] We will affirm the order of the District Court.

Stanton was on probation when he evaded a traffic stop on July 31, 2010. During a high-speed chase, police saw an item being thrown out of the window of Stanton's vehicle. Police captured Stanton, arrested him, and then recovered the item thrown out of the window, a sawed-off shotgun. Stanton was charged with weapons and motor vehicle violations.

Stanton's probation officer, Marc Wilner, did not know about the July 31 arrest until three days later. By then, police had released Stanton from custody on bond. Wilner obtained a warrant for Stanton's arrest for violating the terms of his parole but he was unable to find him. Stanton failed to appear at a preliminary hearing, prompting a bench warrant for his arrest. His whereabouts remained unknown for over one month.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] Stanton also appeals his sentence. The Government cross-appealed Stanton's sentence at Case Number 16-4395. We will address all sentencing issues in a separate opinion at that case number.

In September 2010, a confidential informant told Wilner that she had given permission to Donna Gessley and Robert Liberto to live in an apartment that the informant leased. Officers knew Gessley and Liberto as drug addicts. The apartment was close to the address listed as Stanton's residence. The informant identified Stanton from a mugshot as someone who had been at the apartment. She believed he was selling drugs to Gessley, Liberto, and others from there. Wilner confirmed that Stanton's name did not appear on the lease for the premises, and then asked the informant to visit the apartment to see if Stanton was there. She went later that day, reported back that he was there and that she observed Stanton placing two guns on top of a cabinet in the kitchen. The informant gave Wilner permission to search the premises. She also offered Wilner a key to the apartment but he did not take it.

A short time later, Wilner and officers from the Allegheny County Fugitive Task Force surrounded the apartment building. An officer from the Task Force knocked on the front door of the apartment and explained to Gessley (who opened the door) that they were there to arrest Stanton. Gessley invited the officers in. Liberto, the other renter, was also there. As they searched for Stanton, they observed a black digital scale on a table in the living room and a bag with a white substance on the floor nearby. They found Stanton in a bedroom. During a pat-down at the time of his arrest, police discovered another bag with a white substance in Stanton's pocket.

After taking Stanton out of the apartment, one of the officers from the Task Force asked Gessley for permission to search the apartment. She agreed, signing a consent to search form. Liberto objected. Officers discovered two guns (a Browning .22 caliber,

3

and a 9-millimeter pistol) on top of a kitchen cabinet (just as the informant had reported). The arrest report reveals that officers seized the digital scale, two bags containing crack cocaine, and two handguns.

A federal Grand Jury issued a five-count indictment charging Stanton with crimes from both the July 2010 and September 2010 arrests.[2] Stanton pleaded not guilty. He later moved to suppress the evidence seized after both arrests. The District Court denied the motion. A jury convicted him of felon in possession of a firearm (under 18 U.S.C. §§922(g)(1) and 924(e)) arising from the July arrest, and possession of crack cocaine with intent to distribute (under 21 U.S.C. §841) arising from the September arrest.

On appeal, Stanton challenges the District Court's denial of his motion to suppress the crack cocaine found in the living room, the digital scale, and the guns seized during his September 9 arrest. He contends that officers, acting only on the authority of the bench warrant, unlawfully searched the apartment after Stanton's arrest in September without a warrant and without probable cause or exigent circumstances to justify the search. We review the District Court's factual findings for clear error and give plenary

---

[2] The indictment had five counts: Count I. Being a convicted felon while in possession of the shotgun in violation of 18 U.S.C. §§922(g)(1) and 924(e), arising from the July 2010 arrest; Count II. Possession of firearms in violation of Sections 922(g)(1) and 924(e), arising from September 2010 arrest; Count III. Maintaining a drug-involved premises in violation of 21 U.S.C. §856(a)(1), arising from September 2010 arrest; Count IV. Posession of crack cocaine with the intent to distribute in violation of 21 U.S.C. §841, arising from September 2010 arrest; Count V. Possessing a firearm in relation to a drug-trafficking crime in violation of Section 924(c)(1)(A)(i), arising from September 2010 arrest. U.S. App. 357-64.

review to its application of the law to those facts.  *United States v. Mallory*, 765 F.3d 373, 381 (3d Cir. 2014).

Stanton has failed to persuade us that a constitutional violation occurred.[3]  He wants us to focus on the bench warrant as the sole basis for officers' presence in the apartment to argue that a probable cause standard (rather than a reasonable suspicion standard applicable to searches involving probationers) applies here, and that the officers' information about the circumstances in the apartment prior to their entry was limited to the presence of Stanton.  But regardless, the result is the same.

The officers had a warrant and had Gessley's consent to enter the apartment to arrest Stanton.  As the officers walked through the apartment, obviously incriminating objects (the scale and the nearby bag of crack cocaine) that fell into their view as they looked for Stanton were properly seized after they arrested him.  *Harris v. United States*, 390 U.S. 234, 236 (1968).  As a result, the District Court did not err by admitting these items in evidence.

We conclude that the District Court properly admitted the guns into evidence under the inevitable discovery exception to the warrant requirement.  This exception allows for the admission of illegally obtained evidence where such evidence would have

---

[3] The Government argues that Stanton does not have standing to challenge the admission of this evidence.  However, the District Court declined to rule on a statement that, at least in part, grounds the Government's argument:  a legal conclusion made by Stanton's counsel that he did not have a privacy interest in the apartment.  We may uphold the denial of a motion to suppress on any basis supported by the record.  *See United States v. Dupree*, 617 F.3d 724, 728 n.2 (3d Cir. 2010).

been discovered by the authorities through a proper channel. *See Nix v. Williams*, 467 U.S. 431, 444 (1984). The accumulation of evidence discussed by the District Court supporting the inevitability that a search warrant would have issued, gives us confidence that the District Court did not err by denying the motion and admitting the guns in evidence

For all of these reasons, we will affirm the order of the District Court.