**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4400
_____

GOVERNMENT OF THE VIRGIN ISLANDS

v.

EARL A. VANTERPOOL,
Appellant
_____

ON APPEAL FROM THE DISTRICT COURT
OF THE VIRGIN ISLANDS
(D.C. Cr. No. 3-05-cr-00064-001)
Chief Judge: Hon. Curtis v. Gómez[1]
District Judge: Hon. Raymond Finch[2]

_____

Argued May 13, 2014

---

[1] Judge Wilma A. Lewis is the current Chief Judge of the District Court of the Virgin Islands.

[2] While Judge Julio A. Brady, Judge of the Superior Court, Division of St. Croix, sat on the panel that considered this matter, he retired before the decision was issued.

_____

Before: RENDELL, FUENTES, GREENAWAY, JR., *Circuit Judges*.

(Opinion Filed: September 12, 2014)

Kyle R. Waldner, Esq. **[ARGUED]**
Quintairos, Prieto, Wood & Boyer
Suite 10
1000 Blackbeard's Hill
St. Thomas, VI 00802

*Counsel for Appellant*

Kimberley L. Salisbury, Esq. **[ARGUED]**
Office of Attorney General of Virgin Islands
Department of Justice
34-38 Kronprindsens Gade
GERS Complex, 2nd Floor
St. Thomas, VI 00802

*Counsel for Appellee*

_____

OPINION
_____

GREENAWAY, JR., *Circuit Judge*.

Earl Vanterpool was prosecuted and convicted under V.I. Code Ann. tit. 14, § 706(1) ("Section 706") for obsessive phone calls and faxes to his ex-girlfriend, Jacqueline Webster. On appeal, we are asked to consider three issues: (1) whether Section 706 is unconstitutional under the First Amendment; (2) whether Vanterpool has shown that his trial counsel's performance amounted to an ineffective assistance of counsel under the Sixth Amendment; and (3) whether there was sufficient evidence in the record to support Vanterpool's multiple convictions.

While we find that the First Amendment challenge would have been viable had it been raised during trial, the plain error standard that we are obligated to apply in this case precludes any grant of the relief sought. By virtue of trial counsel's failure to preserve the First Amendment challenge, however, the prejudice prong of the *Strickland* test is satisfied. Because the record is insufficiently developed for us regarding whether trial counsel's performance fell below professional norms, we shall remand and order that an evidentiary hearing be held to determine whether the performance of Vanterpool's trial counsel did indeed fall below the *Strickland* standard.

I.        **FACTS AND PROCEDURAL HISTORY**

In May 2004, Jacqueline Webster expressed a desire to end her relationship with Earl Vanterpool because Vanterpool had become possessive and called her frequently. Despite

this issue, the two continued to be in contact with each other and did not officially end their relationship until November 2004.

After the end of the relationship, Vanterpool continued to make numerous calls to Webster's phone, and started sending her faxes. Vanterpool would, at times, call Webster as often as six or seven times an hour. (App. 49, 52.) Webster informed Vanterpool that she wanted him to stop communicating with her, to no avail.

Following her unsuccessful attempts to stop Vanterpool's communications, Webster went to the police station to file a report. At the police station, Webster was assisted by Sergeant Boynes of the Virgin Islands Police Department. While Webster was speaking with Boynes at the station, Vanterpool called her multiple times. During one such call, Webster handed the phone to Sergeant Boynes, who informed Vanterpool that he was not supposed to be calling Webster and that if he continued to call her, he would be arrested. Vanterpool continued to contact Webster through both phone and fax.

As a result of his behavior, the Government of the U.S. Virgin Islands ("Government") brought four charges against Vanterpool: (1) one count of harassment by telephone occurring on or about January 6, 2005, in violation of V.I. Code Ann. tit. 14, § 706(1) and V.I. Code Ann. tit. 16, § 91(b)(10); (2) one count of harassment by telephone occurring on or about December 21, 2004, in violation of V.I. Code Ann. tit. 14, § 706(1) and V.I. Code Ann. tit. 16, § 91(b)(10); (3) one count of harassment by written communication occurring on or about January 6, 2006, in violation of V.I. Code Ann. tit. 14, § 706(1) and V.I. Code

4

Ann. tit. 16, § 91(b)(10); and (4) one count of harassment by written communication on or about December 21, 2004, in violation of V.I. Code Ann. tit. 14, § 706(1) and V.I. Code Ann. tit. 16, § 91(b)(10).

Vanterpool and Webster both testified at the ensuing bench trial presided over by Judge Brenda Heller of the Superior Court of the Virgin Islands. The Superior Court found Vanterpool guilty on all four counts; thereafter, Vanterpool filed a timely appeal. The Appellate Division of the District Court of the Virgin Islands ("District Court"), in a per curiam opinion, affirmed Vanterpool's convictions. Vanterpool filed this timely appeal.

## II. JURISDICTION

The District Court had jurisdiction under V.I. Code Ann. tit 4, § 33 and this Court has jurisdiction under 28 U.S.C. § 1291 and 48 U.S.C. § 1613a(c).

## III. ANALYSIS

### A. First Amendment Challenge

Vanterpool argues that Section 706 is unconstitutional under the First Amendment of the Constitution of the United States. Section 706, in relevant parts, criminalizes the actions of anyone who "with intent to harass or alarm another person . . . communicates with a person, anonymously or otherwise, by telephone, or by telegraph, mail or any other form of written communication, in a manner likely to harass or alarm[.]" V.I. Code Ann. tit. 14, § 706(1). It is uncontested that this constitutional challenge was not raised in the proceedings below, and therefore, the standard of review is

plain error. *See United States v. Marcus*, 560 U.S. 258, 262 (2010). Because this standard substantially limits the type of scrutiny that we may apply to Vanterpool's First Amendment challenge, we now review the plain error standard in detail.

Federal Rule of Criminal Procedure 52(b) provides a court of appeals with a limited power to correct errors that were forfeited because they were not timely raised in district court. Fed. R. Crim. P. 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."). Under this standard, "an appellate court may, in its discretion, correct an error not raised at trial only where the appellant demonstrates that (1) there is an 'error'; (2) the error is 'clear or obvious, rather than subject to reasonable dispute'; (3) the error 'affected the appellant's substantial rights, which in the ordinary case means' it 'affected the outcome of the district court proceedings'; and (4) 'the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Marcus*, 560 U.S. at 262.

The Supreme Court has elaborated upon the "clear or obvious" standard in the seminal case of *United States v. Olano*, 507 U.S. 725, 731-37 (1993). There, the Court clarified that a "court of appeals cannot correct an error pursuant to Rule 52(b) unless the error is clear under current law." *Id.* at 734. Applied to the present case, if the statute was unconstitutional, then the District Court would have committed error when it applied the statute; but even so, we could reverse only if the error were plain under current law.

While this Court has not expressly commented on this issue, our sister circuits have denied relief when an appellant has raised a constitutional challenge to a statute for the first

6

time on appeal. *See, e.g.*, *United States v. Dedman*, 527 F.3d 577, 592 (6th Cir. 2008) ("[T]he district court did not commit plain error in applying the Arkansas marriage statute even assuming that the statute is unconstitutional."); *United States v. Gore*, 154 F.3d 34, 42-43 (2d Cir. 1998) ("[E]rror is plain if it is clear or obvious under current law . . . [or] so egregious and obvious as to make the trial judge and prosecutor derelict in permitting it, despite the defendant's failure to object.") (internal quotation marks omitted); *United States v. Wright*, 466 F.2d 1256, 1259 (2d Cir. 1972) ("It is fair to say that the facial unconstitutionality of the wiretap statute does not leap from the pages of the United States Reports. The question is 'at least sufficiently close' to take it out of the realm of plain error."). We find these cases to be persuasive.[3]

Here, even if the Virgin Islands statute is unconstitutional, it was far from being "clear under current law." *See Olano*, 507 U.S. at 734. From a review of reported cases, it appears that Section 706 had never been challenged before, let alone construed by a court at the time of

---

[3] While there has been an instance where a court of appeals was satisfied that a constitutional challenge to a statute satisfied the plain error standard, see *United States v. Knowles*, 29 F.3d 947, 950-52 (5th Cir. 1994), that case is easily distinguishable. In that case, the Fifth Circuit issued *United States v. Lopez*, 2 F.3d 1342, 1367 (5th Cir. 1993) while *Knowles* was being appealed. Unlike the circumstances at issue here, the Supreme Court had expressly left this question open. *See Olano*, 507 U.S. at 734 ("We need not consider the special case where the error was unclear at the time of trial but becomes clear on appeal because the applicable law has been clarified.").

Vanterpool's trial.[4]  Therefore, the plain error review standard does not permit us to reach the constitutional challenge.[5]

## B. Ineffective Assistance of Counsel Claim

Vanterpool argues that his trial lawyer's performance fell below the standard of effective assistance in violation of the Sixth Amendment of the Constitution of the United States.

We first discuss whether we will review the ineffective assistance claim on direct appeal, given that this Court, in general, does not entertain a claim of ineffective assistance of

---

[4] It appears that there had only been one reported case citing Section 706 at the time of the trial for the present case.  That case, however, did not construe the statute because the claim on the complaint relating to the statute was dismissed.  *See James v. James*, No. 1987/342, 1988 WL 142612 (D.V.I. Dec. 19, 1988).

[5] We do not suggest that a constitutional challenge to a statute can never succeed on plain error review, but only that, in this instance, the unconstitutionality of the statute was insufficiently clear for us to strike it down under the plain error standard.  *Cf. United States v. Cole*, 567 F.3d 110, 117 (3d Cir. 2009) ("Neither the absence of circuit precedent nor the lack of consideration of the issue by another court prevents the clearly erroneous application of statutory law from being plain error.") (internal citation and quotation marks omitted).  Also, it should be self-evident that nothing that we pronounce today forecloses future litigants from challenging the constitutionality of the statute.

counsel on direct appeal. *See, e.g.*, *United States v. Givan*, 320 F.3d 452, 464 (3d Cir. 2003). Among the reasons that such a claim is not usually cognizable on direct appeal is the very important fact that there will not, in the typical case, exist a record developed enough to assess the efficacy of defense counsel. *See United States v. Jake*, 281 F.3d 123, 132 n.7 (3d Cir. 2002).

Although we re-affirm this Court's general practice, we find that the unique circumstances here warrant review on direct appeal. Specifically, Vanterpool is unlikely to meet the "in custody" requirement to bring a collateral habeas petition pursuant to a 28 U.S.C. § 2254 claim.[6] The Supreme Court has interpreted the statutory language under § 2254 as requiring that the habeas petitioner be "in custody" under the conviction or sentence under "attack *at the time his petition is filed*." *Maleng v. Cook*, 490 U.S. 488, 490-91 (1989) (emphasis added). Here, Vanterpool is no longer "in custody" within the meaning of the habeas statute. Vanterpool was never incarcerated, as his sentence was suspended, and he presumably completed probation in 2008. Moreover, his restraining order was fully discharged when Vanterpool completed his probation. The controlling Virgin Islands Code provides that "[t]he defendant's liability for any fine or other punishment imposed as to which probation is granted, *shall be fully discharged* by the fulfillment of the terms and conditions of probation." 5 V.I. Code Ann. tit. 5, § 3711(a) (emphasis added). Even if we construe an undated

---

[6] We do not render an opinion on the availability of habeas, but discuss the issue here from a predictive standpoint as part of our reasoning as to whether to consider the ineffectiveness claim on direct review.

9

trial court restraining order as a permanent restraining order, such a "punishment imposed as to which probation is granted" was "fully discharged" when Vanterpool completed his three-year probation.[7]

This leaves remand as the prudential route. It is worth noting here that our general aversion to entertaining a claim for ineffective assistance on direct appeal is to (1) benefit from the trial court's fact finding; and (2) protect the defendant from prematurely bringing the claim, thereby sparing him from having res judicata attach to the ineffective assistance claim. *See United States v. Cooke*, 110 F.3d 1288, 1299 (7th Cir. 1997) ("This Court's reluctance to consider ineffective assistance claims on direct appeal stems, of course, from the fact that such claims are very unlikely to find any factual support in the trial record and an adverse

---

[7] Of course, the "in custody" language has not required that a petitioner be physically confined in order to challenge his sentence via a habeas corpus petition. In *Jones v. Cunningham*, 371 U.S. 236, 241-42 (1963), for example, the Supreme Court held that a prisoner who had been placed on parole was still "in custody" under his unexpired sentence. However, the Supreme Court has repeatedly emphasized that custody requires a showing of "severe restraints on individual liberty," which is unlikely to be found when the sentence imposed for the conviction has fully expired. *See Maleng v. Cook*, 490 U.S. at 491 ("We have never held . . . that a habeas petitioner may be 'in custody' under a conviction when the sentence imposed for that conviction has *fully expired* at the time his petition is filed. Indeed, our decision in *Carafas v. LaVallee*, [391 U.S. 234, 238 (1968)] strongly implies the contrary.").

determination on direct appeal will be res judicata in any subsequent collateral attack.").

Here, neither rationales apply: a trial court's fact finding is only available on direct appeal, and there is no risk of res judicata applying since collateral relief is unavailable. Indeed, while this Court has not spoken much on this subject, other circuits have recognized that restrictions on the defendant's ability to seek habeas relief constitute grounds to review ineffectiveness claims on direct appeal. *See, e.g.*, *United States v. Doe*, 365 F.3d 150, 153 (2d Cir. 2004) ("AEDPA's restrictions on a prisoner's ability to seek more than one federal habeas petition presented 'a significant reason' not to dismiss ineffective assistance claims raised on direct review in favor of collateral attack under section 2255."). The inability of Vanterpool to challenge his conviction on collateral attack is a matter of critical importance here. If an ineffective assistance claim is unavailable both on direct appeal *and* collateral attack, we are essentially eviscerating a constitutional right by a way of tolerating instances where an individual would get convicted under a presumably unconstitutional state statute, leaving him with no recourse.

We emphasize that we are not abandoning our typical practice of eschewing consideration of ineffective assistance claims on direct appeal. However, where, as here, a district court most probably would not have the opportunity to fact-find on collateral attack, there is no principled reason to follow a discretionary procedure that we developed to ensure that factual records are developed before we review ineffective assistance claims. *Cf. United States v. Rashad*, 331 F.3d 908, 911 (D.C. Cir. 2003) ("[W]e reject the Government's premise that our remand practice on direct

appeal should be curtailed in order to give effect to the statutory restriction upon a defendant's ability to launch a second collateral challenge to his conviction."); *United States v. Leone*, 215 F.3d 253, 257 (2d Cir. 2000) ("[W]e choose to exercise our discretion to remand to the district court for further fact-finding rather than to dismiss the appeal and force the appellant to use up his only habeas petition.").

Therefore, we proceed to review the merits of Vanterpool's ineffective assistance of counsel claim.

### 1. Right to Counsel: Overview

The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel playing a role that is critical to the ability of the adversarial system to produce just results. *See Strickland v. Washington*, 466 U.S. 668, 684-85 (1984). The Supreme Court has set forth a two-part test for evaluating the claim that he was denied his Sixth Amendment right to effective assistance of counsel. First, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688; *see also Hill v. Lockhart*, 474 U.S. 52, 57 (1985). This inquiry "is necessarily linked to the practice and expectations of the legal community." *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010). But a "fair assessment of attorney performance requires [us] . . . to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

Second, a defendant must prove prejudice. The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to

undermine confidence in the outcome. That requires a "substantial," not just "conceivable," likelihood of a different result. *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) (internal quotation marks omitted). "This standard 'is not a stringent one[.]'" *Jermyn v. Horn*, 266 F.3d 257, 282 (3d Cir. 2001) (quoting *Baker v. Barbo*, 177 F.3d 149, 154 (3d Cir. 1999)). We examine the prejudice prong first, followed by the reasonableness prong.[8]

### 2. Prejudice

Of various theories offered by Vanterpool, the theory that ineffective assistance resulted from his counsel's failure to "challenge the constitutionality of Section 706" deserves our scrutiny.[9] (*See* Appellant Br. 28.)

---

[8] This Court has "endorsed the practical suggestion in *Strickland* to consider the prejudice prong before examining the performance of counsel prong[.]" *United States v. Booth*, 432 F.3d 542, 546 (3d Cir. 2005).

[9] Although we find that this theory is sufficient to demonstrate the prejudice prong, we also note that the record is replete with statements by trial counsel that raise questions about his competency. (*See, e.g.*, App. 134 ("I really don't know what to say. Mr. Vanterpool says he wants to have a trial so we had a trial."); App. 135 ("At this point there is no real rationality to it. . . . He just seems to be incapable of understanding that a person is telling him that they no longer want to have contact with him.").)

13

The First Amendment, applicable to the U.S. Virgin Islands through the Organic Act,[10] states that "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. Const. amend. I. Although the rights guaranteed by the First Amendment are not absolute, as a general matter, the Government may not limit or prohibit speech. *See Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 245 (2002) ("As a general principle, the First Amendment bars the government from dictating what we see or read or speak or hear.").

Vanterpool makes three constitutional challenges to Section 706 under the First Amendment. First, Vanterpool argues that the statute was unconstitutionally vague as applied to him. Second, Vanterpool argues that the statute was unconstitutionally vague on its face. Finally, he argues that the statute was unconstitutionally overbroad. Of these challenges, we only need to analyze the overbreadth challenge to show that there would have been a reasonable probability that the outcome would have been different.

The constitutional guarantees of freedom of speech forbid the states to punish the use of words or language not within "narrowly limited classes of speech . . . ." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571 (1942). Even as to such a class, however, because "the line between speech

---

[10] "[T]he Organic Act guarantees to the inhabitants of the islands in the very language of the First Amendment to the Constitution of the United States the same freedom of speech and of the press which is safeguarded to the inhabitants of the United States by the First and Fourteenth Amendments." *People of Virgin Islands v. Brodhurst*, 148 F.2d 636, 643 (3d Cir. 1945).

14

unconditionally guaranteed and speech which may legitimately be regulated, suppressed, or punished is finely drawn[,]" *Speiser v. Randall*, 357 U.S. 513, 525 (1958), "[i]n every case the power to regulate must be so exercised as not, in attaining a permissible end, unduly to infringe the protected freedom," *Cantwell v. Connecticut*, 310 U.S. 296, 304 (1940). In other words, the statute must be carefully drawn or be authoritatively construed to punish only unprotected speech and not be susceptible to application to protected expression. Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity. *Nat'l Ass'n for Advancement of Colored People v. Button*, 371 U.S. 415, 433 (1963). To prevail upon such a challenge, especially in a case involving conduct as well as speech, the overbreadth of the statute "must not only be real, but substantial," in relation to the legitimate coverage of the statute. *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973).

The Government points to our precedent in *United States v. Lampley* to uphold the constitutionality of Section 706. *Lampley*, which involved a person charged under the federal telephone harassment statute, 47 U.S.C. § 223, involved a "bizarre tale of a romantic obsession" involving a breakup and a launch of "a telephonic assault . . . unleashing a barrage of incessant and subsequently abusive telephone calls." *United States v. Lampley*, 573 F.2d 783, 786 (3d Cir. 1978). Lampley asserted that the statute violated the First Amendment because it failed to specify that the requisite ensuing conversation must contain harassing language. This Court rejected such a claim, reasoning that the statute's specific intent requirement rendered unconvincing Lampley's claim, since it has long been true that "[w]here the

15

punishment imposed is only for an act knowingly done with the purpose of doing that which the statute prohibits, the accused cannot be said to suffer from lack of warning or knowledge that the act which he does is a violation of law." *Id.* at 787 (quoting *Screws v. United States*, 325 U.S. 91, 101-02 (1945)).

A close examination of the statutory language of Section 706, along with the actual charges brought against Vanterpool reveals, however, that *Lampley* is distinguishable from this case. Importantly, unlike the federal telephone harassment statute, the Virgin Islands statute seeks to regulate not only conduct associated with the use of the telephone, but also "written communications."[11] The Virgin Islands statute, moreover, regulates not only conduct "solely intending to harass" but any conduct "intending to harass," broadly sweeping to regulate a wide variety of expressive speech.[12]

---

[11] The record makes clear that Counts III and IV are charges for "*writing* in a manner likely to harass or alarm her." (App. 38 (emphasis added).)

[12] The version of the federal statute discussed in *Lampley* criminalized anyone who "makes repeated telephone calls, during which conversation ensues, solely to harass any person at the number called[.]" *Lampley*, 573 F.2d at 791 (quoting 47 U.S.C. § 223 (1)(D) (1976) (internal quotation marks omitted). The Virgin Islands statute, on the other hand, criminalizes the actions of anyone who "with intent to harass or alarm another person . . . communicates with a person, anonymously or otherwise, by telephone, or by telegraph, mail or any other form of written communication, in a manner likely to harass or alarm[.]" V.I. Code Ann. tit. 14, § 706(1).

Here, the record indicates that the letters sent by Vanterpool are forms of written communications that fall within the category of protected speech. (*See, e.g.*, App. 150 ("I still love you and thanks. I forgive you like the Lord forgive [sic.] us in order to make it into his Kingdom.").) Vanterpool's communications do not fall into one of the defined categories of unprotected speech such as defamation, incitement, obscenity, or child pornography.[13] *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 246 (2002). Nor do they constitute unprotected "true threats," because they are not "serious expression[s] of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 344 (2003). Rather, they are the kind of *communicative* speech that implicates the First Amendment. *See* Jed Rubenfeld, *First Amendment's Purpose*, 53 Stan. L. Rev. 770, 777 (2001). Indeed, Vanterpool's faxed letters are at best communications people might find distasteful or discomforting. While the Government has undoubtedly a legitimate interest in protecting persons against unwarranted invasion of privacy by others, see, e.g., *Miller v. California*, 413 U.S. 15 (1973), the Supreme Court has also made very clear that such communications are fully protected speech. *See Texas v. Johnson*, 491 U.S. 397, 414 (1989) ("If there is a bedrock principle underlying the First Amendment, it is that the

---

[13] First Amendment protection applies as much to written materials sent through the mails, as it does to verbal communications. *See Lamont v. Postmaster General of the United States*, 381 U.S. 301, 305 (1965) (stating that "the use of the mails is almost as much a part of free speech as the right to use our tongues").

government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable.").

Section 706 is especially repugnant to the First Amendment because past romantic relationships or family conflicts often lead to unsatisfactory, unpleasant discourse that still falls under the protection of the First Amendment. *See United States v. Darsey*, 342 F. Supp. 311, 314 (E.D. Pa. 1972) ("Up to a point these are the normal risks of human intercourse, and are and should be below the cognizance of the law."). The State may not abridge one's First Amendment freedoms merely to avoid annoyances. *Coates v. Cincinnati*, 402 U.S. 611, 615 (1971). "The ability of government, consonant with the Constitution, to shut off discourse solely to protect others from hearing it is, in other words, dependent upon a showing that substantial privacy interests are being invaded in an essentially intolerable manner." *Cohen v. California*, 403 U.S. 15, 21 (1971). Moreover, the First Amendment protects more than just amiable communications. *See, e.g.*, *Norwell v. City of Cincinnati*, 414 U.S. 14, 15-16 (1973). A harassment statute should be carefully tailored to avoid constitutional vulnerability on the grounds that it needlessly penalizes free speech.

Therefore, had Vanterpool's attorney raised the issue to the trial court, Section 706 would likely have been found unconstitutional. By virtue of his trial counsel's failure to preserve a viable First Amendment challenge, Vanterpool has satisfied the second prong of the *Strickland* test.

*3. Trial Counsel's Performance*

18

"[T]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (internal quotation marks omitted). A fair assessment of counsel's performance requires that every effort be made to eliminate the distorting effects of hindsight, reconstruct the circumstances of counsel's challenged conduct, and evaluate the conduct from counsel's perspective at the time. *See Marshall v. Hendricks*, 307 F.3d 36, 105-06 (3d Cir. 2002). Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks omitted).

The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Id.* at 689. In making the competency determination, the court "should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case." *Id.* at 690. Because that testing process generally will not function properly unless defense counsel has done some investigation into the prosecution's case and into various defense strategies, the Supreme Court has stated that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691.

There are several competing factors at play here. In favor of Vanterpool's position, there were cases from other

19

jurisdictions at the time of the trial that found similar statutes unconstitutional. *See, e.g.*, *United States v. Popa*, 187 F.3d 672, 674-78 (D.C. Cir. 1999) (holding that the federal telephone harassment statute was unconstitutionally vague); *Walker v. Dillard*, 523 F.2d 3, 4 n.1 (4th Cir. 1975) (holding that the Virginia statute making it illegal to "curse or abuse anyone, or use vulgar, profane, threatening or indecent language over any telephone" was facially overbroad). This fact is important because this Court has held that counsel's failure to raise a personal-use argument at sentencing constituted ineffective assistance of counsel based on precedents from our sister circuits. *See Jansen v. United States*, 369 F.3d 237, 241, 243-44 (3d Cir. 2004) ("At the time of sentencing the Courts of Appeals for the Seventh and Ninth Circuits had held that drugs possessed for personal use may not be included in calculating a Guideline sentence for possession with intent to distribute under U.S.S.G. § 2D1.1. . . . The conclusion that counsel's performance was ineffective is not based on hindsight. The decisions [of our sister circuits] were readily available to him."). Thus, if trial counsel's failure to raise a First Amendment challenge is attributable to an ignorance of the law, Vanterpool would have a valid ineffective assistance claim. As the Supreme Court recently re-affirmed, "[a]n attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*." *Hinton v. Alabama*, 134 S. Ct. 1081, 1089 (2014).

Undermining Vanterpool's claim, on the other hand, is our precedent in *Lampley* construing a similarly-worded (yet substantively different) federal statute. *United States v. Lampley*, 573 F.2d 783 (3d Cir. 1978). This case, along with

20

a number of cases from other jurisdictions upholding the constitutionality of similar statutes,[14] could have suggested to reasonably competent trial counsel that a First Amendment challenge would be unsuccessful. If Vanterpool's counsel had considered the issue, and had determined from either a merits-based or strategic standpoint that the challenge to the statute should not be pursued, we might have greater difficulty in concluding that his representation was sub-standard. We cannot, however, determine this on the record provided to us given that the facts necessary for the consideration of this issue were not explored at trial and are in need of further development. Therefore, because we find that there are not sufficient facts *in this record* for Vanterpool to meet the first prong, we find that remand is appropriate.

## C. Sufficiency of the Evidence

Vanterpool argues that there was insufficient evidence to permit the jury to find that Vanterpool's conduct constituted a violation of Section 706. Critical to his position is the argument that the government "failed to prove that Vanterpool had the requisite 'intent to harass or alarm another person[.]'" (Appellant Br. 47.)

This argument is unavailing. Under Supreme Court precedent, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any*

---

[14] *See, e.g.*, *State v. Hagen*, 558 P.2d 750, 752 (Ariz. Ct. App. 1976); *see also* Wayne F. Foster, *Validity, Construction, and Application of State Criminal Statutes Forbidding Use of Telephone to Annoy or Harass*, 95 A.L.R.3d 411 (1979) (collecting cases).

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In reviewing the sufficiency of the evidence, "we must view the evidence in the light most favorable to the Government[.]" *United States v. Pearlstein*, 576 F.2d 531, 534 (3d Cir. 1978). As this Court has pronounced, a district court's verdict will be overturned "only when the record contains no evidence, regardless of how it is weighted, from which the jury could find guilt beyond a reasonable doubt." *United States v. Miller*, 527 F.3d 54, 62 (3d Cir. 2008) (quoting *United States v. Thayer*, 201 F.3d 214, 218-19 (3d Cir. 1999)).

Here, there is enough evidence in this record to find that Vanterpool violated Section 706. Vanterpool admitted in court that the repeated telephone calls were placed by him, and Vanterpool did not contest that these calls and letters were sent even after being told by the police and Webster that the communications were not welcome. Because the reviewing court must treat all of the incriminating evidence as true and credible, the Government has presented sufficient evidence that Vanterpool violated the statute. *See United States v. Lore*, 430 F.3d 190, 203-04 (3d Cir. 2005).

## IV. CONCLUSION

For the reasons set forth above, we will vacate and remand this case for further proceedings in accord with this opinion.