**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 14-3703

_____

UNITED STATES OF AMERICA

v.

KAREEM LONG
a/k/a KAREEM SMALLS,
Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No. 2-12-cr-00418-003
District Judge: The Honorable Juan R. Sanchez

_____

Argued February 29, 2016

Before: McKEE, *Chief Judge*, SMITH, and HARDIMAN, *Circuit Judges*

(Opinion Filed:  May 5, 2016)

Eric B. Henson                    **[ARGUED]**
Robert Zauzmer
Virginia P. Pratter
Office of United States Attorney
615 Chestnut Street
Philadelphia, PA  19106
        *Counsel for Appellee*

Raymond D. Roberts        **[ARGUED]**
2nd Floor
1333 Race Street
Philadelphia, PA  19107
    *Counsel for Appellant*

—————————

OPINION[*]

—————————

SMITH, *Circuit Judge.*

This appeal stems from a stash-house robbery sting operation that took place in Philadelphia from June to July of 2012.  Of the eight individuals caught in the operation, three pled guilty prior to trial.[1]  Following their convictions in a joint trial, the remaining five,[2] including Appellant Kareem Long, filed separate appeals, each contesting various issues relating to their convictions (and, for some, their sentences).  For the reasons explained below, we will uphold Long's convictions and corresponding sentence.

---

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] These were Najee Murray, Lafayette Rawls, and Jamie Dales.

[2] Long's co-defendants at trial were Marlon Graham, Kenneth Parnell, Frank Thompson, and Robert Lamar Whitfield.  Separate opinions resolving each co-defendant's appeal have been, or will be, filed.  *See United States v. Whitfield*, No. 14-3345; *United States v. Graham*, No. 14-3717; *United States v. Parnell*, No. 14-4100; *United States v. Thompson*, No. 14-4512.

## I.

In June of 2012, a confidential informant (CI) contacted Robert Lamar Whitfield and asked him for help getting in touch with a mutual acquaintance so that the CI could invite the acquaintance to rob a drug stash house. Whitfield instead volunteered to take care of the robbery himself, claiming that he had significant experience robbing stash houses in the past. The CI then put Whitfield in touch with the CI's "uncle," who turned out to be an undercover agent for the Bureau of Alcohol, Tobacco, and Firearms (ATF). Whitfield met with the agent on several occasions to discuss the robbery. To facilitate the crime, Whitfield recruited others to join in the scheme, who in turn recruited others, including Long.

Plans came to a head on July 18 when Long and seven others met with the undercover agent in the parking lot of a Hilton Hotel where the agent once again told those present about the robbery, including that he expected ten kilograms of cocaine to be inside the stash house, and that he expected the house to be guarded by two men, one with a pistol and the other within reach of an assault-style rifle. The agent then made clear that any who wished to withdraw should do so at that time. After no one expressed hesitation about the plan, the group proceeded to a junkyard, presumably to check out a van that the agent was to have rented for use during the robbery. There, the group continued making preparations for the robbery, with several individuals arranging and inspecting firearms and

3

distributing gloves to all present. At the undercover agent's signal, law enforcement officials swarmed the yard and arrested the group.

A grand jury returned an indictment charging each of the co-conspirators with multiple inchoate Hobbs Act robbery and drug distribution offenses, as well as with the crime of carrying a firearm during and in relation to a crime of violence or a drug trafficking crime. Additionally, Long, Thompson, and Dales were charged with being felons in possession of a firearm, though Long and Thompson were both acquitted at trial on this count. The jury convicted Long and the four other defendants on all counts for which they were mutually charged. Long was subsequently sentenced to 192 months in prison. He then timely filed this appeal.

**II.**

Long raises a number of issues for our consideration on appeal. First, he argues that the District Court erred by allowing the prosecution to use leading questions during the direct examination of one of its own witnesses; second, he claims that the District Court erred by admitting testimony of Lafayette Rawls about extrinsic other acts; and third, he argues that the indictment should have been dismissed on the theory that a person may not be charged with both conspiracy and

attempt to commit the same substantive offense.[3]  We will discuss each argument in turn below.[4]

## A.

Long argues that the District Court erred by allowing the government to ask leading questions during the direct examination of Rawls.  We review for abuse of discretion a district court's decision regarding the use of leading questions.  *Gov't of V.I. v. Brathwaite*, 782 F.2d 399, 406 (3d Cir. 1986).  Rule 611 of the Federal Rules of Evidence provides that "[l]eading questions should not be used on direct examination except as necessary to develop the witness's testimony."  District courts enjoy wide discretion in deciding whether to permit leading questions, as the

---

[3] Long raises several other issues that some or all of his co-defendants have also raised.  First, he claims that the District Court should have dismissed the indictment because the fictitious stash-house robbery could not possibly "affect[] commerce" as required for conviction under the Hobbs Act, 18 U.S.C. § 1951(a), and that the District Court erred (i) by not allowing him to contest during closing statements the government's ability to prove an effect on commerce, and (ii) by refusing to instruct the jury that it could acquit on the Hobbs Act charges based solely on the fictitious nature of the scheme.  Second, Long argues that the District Court should have granted the motion for discovery to pursue a claim of selective enforcement.  Third, he claims the District Court erred in denying his and his co-defendants' motion to dismiss the indictment based on "outrageous government conduct."  Fourth and finally, he claims he was the victim of sentencing entrapment and sentencing factor manipulation.  We rejected these or very similar arguments in *United States v. Whitfield*, No. 14-3345, and do so here for the same reasons expressed in that opinion.

rule "is phrased in words of suggestion rather than command." Fed. R. Evid. 611 advisory committee's note to subdiv. (c); *see also United States v. Shoupe*, 548 F.2d 636, 641 (6th Cir. 1977) ("It is well recognized that the use of leading questions during the direct examination of a witness falls within the sound discretion of the trial court.").

The questions to Rawls that Long specifically claims were impermissibly leading and to which the District Court overruled his objections were:

- "[D]id you tell your uncle, Najee Murray, that you, Kareem Long and Kenneth Parnell were ready to do this?"

- "Other than, Kareem Long and Kenneth Parnell, that you got to do the robbery, did you get anyone else to do the robbery?"[5]

Although both questions suggested that Long had formed the intent to commit the robbery, we think the District Court did not abuse its discretion in admitting these questions. Any prejudice that the questions caused Long was minimal, as he had

---

[4] The District Court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

[5] In his appellate brief, Long also points to a third question asked of Rawls that he claims was impermissibly leading: "And who was going in your car to the robbery?" Because Long did not object to this question, we are limited to plain error review. *See Gov't of V.I. v. Vanterpool*, 767 F.3d 157, 162 (3d Cir. 2014). Even if it was error to permit this question, the error was not plain, nor did it "affect[] substantial rights." *United States v. Olano*, 507 U.S. 725, 732 (1993) (quoting Fed. R. Crim. P. 52(b)). We are therefore without discretion to correct it. *Id*. at 731-32.

every opportunity to cross-examine Rawls to demonstrate that Rawls was not aware of Long's specific intent to engage in the crimes charged. As such, we will uphold the District Court's decision to allow the questions.

**B.**

Long also claims that the District Court erred by admitting testimony by Rawls to the effect that (i) Long approached Rawls a few weeks before the stash-house sting in this case to ask for Rawls' help in identifying a potential target for a robbery, and (ii) shortly thereafter Long informed Rawls that he and some accomplices had robbed the home of a drug dealer. We review for abuse of discretion the District Court's admission of other act evidence under Rule 404(b) of the Federal Rules of Evidence. *United States v. Ciavarella*, 716 F.3d 705, 727 n.12 (3d Cir. 2013) ("[T]he district court has significant leeway in reaching its decision." (internal quotation marks and citation omitted)).

Extrinsic evidence of other acts committed by a defendant in a criminal trial is admissible if four requirements are met: first, the evidence must be proffered for a proper purpose under Rule 404(b); second, the evidence must be relevant to proving that purpose without relying on any propensity inference; third, the probative value of the evidence must not be substantially outweighed by the danger posed by the evidence of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence,"

7

Fed. R. Evid. 403; and fourth, where requested, the evidence must be accompanied by a limiting instruction. *See Ciavarella*, 716 F.3d at 728 & n.15 (citing *Huddleston v. United States*, 485 U.S. 681, 691 (1988)).

Prior to trial in this case, the government moved *in limine* for the admission of various pieces of 404(b) evidence, including the evidence of Long's prior home-invasion robbery, citing motive and intent as proper purposes for all the 404(b) evidence. The District Court denied this motion, specifically noting that the government's "chain of inferences" connecting the 404(b) evidence to motive – to wit, "that Defendants' prior robberies show committing robbery is their livelihood (or 'resume'), giving them a motive to commit robbery in this case" – "comes perilously close to an improper propensity argument that because Defendants committed robberies in the past, they are more likely to have committed the robbery charged in this case." Nevertheless, the District Court's denial was without prejudice to the government's ability to renew its motion during trial "in the event the Defendants put at issue their lack of intent."

During his opening statement, counsel for Long suggested that when Rawls recruited Long to participate in the stash-house robbery in this case, Long did not know the specific nature of the scheme, and that he showed up at the Hilton hotel parking lot on July 18 merely to hear about some unspecified "opportunity for us

to make money."[6] Based on this, the District Court then granted the government's renewed motion as to the 404(b) evidence against Long, concluding that the evidence was "relevant to rebut Long's claim that he went to the Hilton on July 18 simply to hear a pitch." The court continued,

> The fact that Long went to the Hilton at the behest of Rawls—who had recently given Long a lead on a similar robbery, which Long went on to commit and then told Rawls about—tends to show both that Long knew the nature of the pitch beforehand and that his purpose in going to the Hilton on July 18 was to join the alleged conspiracy.

Thus, the District Court found the evidence relevant for two purposes, knowledge and intent.

While we have reservations about whether the evidence of Long's prior home-invasion robbery was relevant to proving his intent to join the conspiracy in

---

[6] As he did before the District Court, Long argues on appeal that his opening statement did not suggest he was unaware that the meeting at the hotel parking lot related to a stash-house robbery. Nevertheless, the District Court clearly thought that Long's opening was suggesting such ignorance, and we cannot conclude that this was an unreasonable interpretation of his remarks.

We also reject Long's argument that an opening statement cannot serve to place a matter "at issue" for purposes of Rule 404(b). Although Long is undoubtedly correct that information conveyed during opening statements does not constitute evidence upon which the jury may rely in reaching a verdict, *see United States v. De Peri*, 778 F.2d 963, 978 (3d Cir. 1985), this does not mean that a defendant's opening statement revealing his defense theory cannot open the door to 404(b) evidence. *See United States v. Kolodesh*, 787 F.3d 224, 236 (3d Cir. 2015) (concluding that 404(b) evidence was relevant to counter the defense theory, as revealed during the defendant's opening statement).

this case,[7] we need not decide that issue because the evidence was clearly relevant to proving that Long knew he was going to the Hilton to hear about a stash-house robbery opportunity. The District Court also engaged in 403 balancing on the record and we find no reason to disturb the court's conclusion that the probative value of the evidence was not substantially outweighed by danger of unfair prejudice.[8] Finally, the District Court satisfied the fourth requirement for

---

[7] As the Seventh Circuit has noted, "only a fine line sometimes distinguishes [propensity and intent]." *United States v. Jones*, 389 F.3d 753, 756 (7th Cir. 2004), *cert. granted, judgment vacated*, 545 U.S. 1125 (2005). Therefore, prosecutors and district courts alike should take extra care to ensure that other act evidence purportedly offered to prove intent is not simply propensity evidence in disguise. *See, e.g., United States v. Smith*, 725 F.3d 340, 345-46 (3d Cir. 2013) (explaining that evidence of defendant's prior drug dealing was impermissible propensity evidence because jury could find evidence relevant to proving proffered 404(b) purposes – motive and intent – only by relying on inference that defendant had bad character and that he "acted in conformity with that character" in engaging in charged conduct); *Becker v. ARCO Chem. Co.*, 207 F.3d 176, 195 (3d Cir. 2000) (concluding that evidence that defendant-employer previously fabricated reasons for terminating different employee was not relevant to proving that defendant's asserted reasons for terminating plaintiff were pretextual; "the evidence would establish ARCO's intent to discriminate against Becker only if the jury drew the inference that in terminating him, ARCO acted in conformity with its purported prior conduct in terminating Seaver").

[8] The District Court concluded that the probative value was not substantially outweighed by the danger of unfair prejudice in light of the temporal proximity and factual similarity between Long's previous robbery and the stash-house robbery in this case, as well as the fact that Rawls was at least somewhat involved in both. We owe substantial deference to the District Court's analysis and conclusion regarding admissibility under Rule 403. *See United States v. Caldwell*, 760 F.3d 267, 284 (3d Cir. 2014) ("When a court engages in a Rule 403 balancing and articulates on the record a rational explanation, we will rarely disturb its ruling.").

admitting extrinsic other act evidence by instructing the jury as to the limited purposes for which they could consider the evidence. Thus we uphold the District Court's admission of 404(b) evidence against Long as being within the court's discretion.

## C.

Finally, Long claims that it was error to allow him to be charged and convicted of attempt and conspiracy because they are both inchoate crimes. In support of this claim he cites *United States v. Meacham*, a Fifth Circuit opinion reversing the appellants' convictions because the indictment charged them with "conspir[ing] to attempt" to commit various drug-related crimes, conduct that does not constitute an "offense" under the Criminal Code. *See* 626 F.2d 503, 507-09 (5th Cir. 1980). Long's reliance on *Meacham* is grossly misplaced. In contrast to the appellants in *Meacham*, Long was charged in separate counts with conspiracy *and* attempt offenses, not with "conspiring *to* attempt." *See United States v. Starks*, 515 F.2d 112, 116 & n.5 (3d Cir. 1975). We therefore reject this argument as meritless.

## III.

We will affirm the District Court's judgment and sentence as to Long.

---

As such, we cannot conclude that the District Court abused its discretion by admitting the evidence under Rule 403.