**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1463
_____

UNITED STATES OF AMERICA

v.

ROBERT HENON,
                    Appellant

_____

On Appeal from the United States District Court
For the Eastern District of Pennsylvania
(District Court No. 2-19-cr-00064-002)
District Judge:  Honorable Jeffrey L. Schmehl
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a) on May 3, 2024
_____

Before:  KRAUSE, CHUNG, and AMBRO, Circuit Judges

(Filed: May 29, 2024)
_____

OPINION[*]
_____

CHUNG, Circuit Judge.

Robert Henon challenges his convictions on various charges related to benefits he

_____

[*]    This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

received in exchange for taking official action. For the reasons that follow, we will affirm the District Court's judgment of conviction.[1]

I.    DISCUSSION

Henon was convicted of honest services wire fraud, federal program bribery, and conspiracy to commit said crimes, all in relation to alleged political corruption during his tenure as a member of the Philadelphia City Council.[2] The Government alleged that Henon and John Dougherty, the Business Manager of the International Brotherhood of Electrical Workers Local 98 ("Local 98"),[3] formed an implicit, corrupt quid pro quo agreement in which Henon received a salary and benefits from Local 98 in exchange for performing official acts for Dougherty on an as-needed basis. The Government also alleged that Henon accepted a bribe in the form of a campaign contribution from Jim Gardler, the Head of the Communications Workers of America (CWA) Local 13000.

---

[1]    The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

[2]    The Government charged Henon with twenty counts, including honest services wire fraud in violation of 18 U.S.C. §§ 1343, 1346; honest services mail fraud in violation of 18 U.S.C. §§ 1341, 1346; federal program bribery in violation of 18 U.S.C. § 666(a)(1)(B), and conspiring to commit those offenses in violation of 18 U.S.C. § 371. The jury found Henon guilty of seven counts of honest services wire fraud for official acts taken in furtherance of his corrupt quid pro quo agreement with John Dougherty, one count of honest services wire fraud for accepting a bribe in the form of the campaign contribution in exchange for taking official action, one count of federal program bribery for accepting the campaign contribution, and one count of conspiracy. The Government dismissed two counts, and the jury acquitted Henon on the remaining eight counts. Because we write for the parties, we recite only the facts and theories pertaining to the counts of conviction.

[3]    Business Manager is the "highest-ranking member" of the union. Appendix ("A") 14.

2

A.    Quid Pro Quo Agreement with Local 98

Evidence at the two-month trial established that Local 98 had employed Henon since 1989, first as an apprentice, then as an electrician, and later as the Political Director. In 2011, Henon won a seat on the Philadelphia City Council and continued to hold private employment at Local 98, which he disclosed as required.  At that time, Local 98 replaced Henon as Political Director, reduced his salary, and listed his position title as "office" on its annual reports to the Department of Labor, with 50% of his work categorized as "general overhead" and 50% as "administration."[4]  Appendix ("A") 4357–58.  In contrast, Henon reported his position title as "electrician."  A4360–4366.  No evidence in the record reflects that he did any electrician work for the union during his years on City Council, however.  Furthermore, there was evidence that Dougherty kept Henon on Local 98's payroll to be "his man on the inside" and that Henon performed no actual work for the union.  A15–16.  See also A4241–42 (Dougherty stating that Henon is "on my payroll"); A4263–65 (call from Dougherty to Henon stating, "I made a little adjustment in your… [money] this month.").

Henon now challenges his conviction on the eight counts (honest services wire fraud and conspiracy) related to the quid pro quo agreement with Dougherty.  Relying on

---

[4]    Henon argued at trial, and reasserts on appeal, that his union work included supporting Local 98's political office, supporting campaigns, and attending AFL-CIO meetings.  Local 98's annual reports, however, categorized 0% of his work as "representational activities" and "political activities and lobbying."  A4357–58.  In any case, the jury was free to reject Henon's argument.

McCormick v. United States, 500 U.S. 257 (1991)[5], Henon argues for the first time on appeal that the District Court should have required the Government to prove, or should have instructed the jury to find, that Henon "explicitly agreed" to perform official acts in exchange for his compensation. Opening Br. at 38. He argues that proof of this additional element is necessary because, as a member of the City Council, he was permitted to receive compensation for outside employment. In his view, the failure to require this additional element effectively allows lawful compensation to be converted into an unlawful bribe whenever an "official takes an act that happens to align with the interests of his outside employer." Id. at 43; see also McCormick, 500 U.S. at 272–73.

Henon argues that he preserved this "proof of explicit agreement" argument before the District Court when he asserted that the Government did not prove his Local 98 salary was paid in exchange for the official acts charged. We disagree. Though the *issue* Henon raised before the District Court may be similar, the *argument* he asserted was different. United States v. Joseph, 730 F.3d 336, 342 (3d Cir. 2013) (explaining distinction between an issue and an argument); id. at 341 ("[A]rguments rather than issues are what parties preserve or waive."). Before the District Court, Henon argued that the Government's evidence was insufficient to establish the existence of a quid pro quo agreement since his employment predated his service on the City Council. Now on

---

[5]     In McCormick, the Supreme Court found that proof of an explicit agreement is required when the alleged quid pro quo payments are campaign contributions. 500 U.S. 257, 273 (1991); see also United States v. Allinson, 27 F.4th 913, 919 n.4 (3d Cir. 2022), cert. denied, 143 S. Ct. 427 (2022).

appeal, however, Henon argues that the District Court should have required the Government to prove an additional element per McCormick, an argument and case that he did not raise before the District Court. This "change[s] the substance of [his] arguments" before the District Court.[6] Id.; see also United States v. Abreu, 32 F.4th 271, 275 (3d Cir. 2022) (argument is preserved only when "it 'depend[s] on both the same legal rule and the same facts as the argument presented in the District Court'") (quoting Joseph, 730 F.3d at 341–42); United States v. Dupree, 617 F.3d 724, 728 (3d Cir. 2010) (judges need not "anticipate" arguments; litigants have the duty to "cite relevant precedents, [and] also to frame the issues for decision"). The fact that Henon did not ask the District Court to instruct the jury to find that an explicit agreement was formed, nor object to the instruction given, further supports this conclusion. By failing to raise this argument before the District Court, Henon did not preserve it, and we thus review it for plain error. Gov't of Virgin Islands v. Vanterpool, 767 F.3d 157, 162 (3d Cir. 2014).[7]

---

[6] Despite Henon's contention that he relied on the same controlling precedent before the District Court, there is no evidence in the record that Henon ever relied on McCormick or argued that the Government was required to prove an explicit agreement under that precedent other than for quid pro quo campaign contributions. See United States v. Dupree, 617 F.3d 724, 729 (3d Cir. 2010) (noting that failure to cite to cases before the District Court that are "central to the legal argument [a party] … presses on appeal" is "telling"). Moreover, Henon conceded in his motion for acquittal that "a quid pro quo need not be explicit or express" outside of the campaign contribution context. D. Ct. Dkt. No. 253, at 5. We therefore cannot say that Henon gave "the District Court the opportunity to consider the argument [he] now makes." Dupree, 617 F.3d at 731.

[7] Under the plain error standard, "an appellate court may, in its discretion, correct an error not raised at trial only where the appellant demonstrates that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the

We see no plain error.  As the Supreme Court and this Court have explained, a quid pro quo agreement "need not be explicit" except in the campaign contribution context.  McDonnell v. United States, 579 U.S. 550, 572 (2016); see also United States v. Bradley, 173 F.3d 225, 232 (3d Cir. 1999), corrected, 188 F.3d 98 (3d Cir. 1999); United States v. Kemp, 500 F.3d 257, 284 (3d Cir. 2007); United States v. Andrews, 681 F.3d 509, 527 (3d Cir. 2012).  Henon's argument advocates for a departure from this jurisprudence.  Consequently, even if Henon were right that an additional element is required to prove a quid pro quo arrangement under these particular circumstances, the District Court did not plainly err when it did not sua sponte reach this unestablished legal conclusion.  United States v. Marcus, 560 U.S. 258, 262 (2010) (appellate courts may only correct errors that are "clear or obvious," not merely "subject to reasonable dispute") (citation and quotation marks omitted); see also United States v. Jabateh, 974 F.3d 281, 299 (3d Cir. 2020) (noting that a novel question of statutory interpretation "is not an interpretative exercise that falls within the exacting limits" of plain error review). [8]

outcome of the district court proceedings; and (4) the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."  Vanterpool, 767 F.3d at 162 (internal citation and quotation marks omitted).

[8]     Henon also argues that the evidence was insufficient to establish that he and Dougherty had an *implicit* quid pro quo agreement.  See Opening Br. at 34.  As this argument was asserted in a single sentence, id., it is waived on appeal.  See Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp., 26 F.3d 375, 398 (3d Cir. 1994) ("[A] passing reference to an issue ... will not suffice to bring that issue before this court") (internal citations and quotations omitted); Fed. R. App. P. 28(a)(8).  Further, even if Henon did not waive this argument, a rational jury could have found that the evidence proved beyond a reasonable doubt that Henon and Dougherty implicitly agreed that Henon would receive benefits via a "no-show" job in exchange for official actions on

6

Accordingly, we will affirm.

        B.      Quid Pro Quo Agreement with CWA Local 13000

The Government also alleged that Henon committed honest services wire fraud when he formed an explicit agreement to hold a hearing against Verizon in exchange for a $5,000 campaign contribution from Gardler (who represented Verizon employees in ongoing labor disputes with the company). Henon argues that the evidence was insufficient to establish an explicit agreement. Our plenary review of a challenge to the sufficiency of the evidence "is greatly tempered by giving substantial deference to the jury's finding of guilt." United States v. Lacerda, 958 F.3d 196, 225 (3d Cir. 2020). Reversal is warranted only "where there is 'no evidence, regardless of how it is weighted, from which the jury could find guilt beyond a reasonable doubt.'" Id. (citation omitted).

Here, there was sufficient evidence from which the jury could find that Henon explicitly agreed to hold a hearing against Verizon in exchange for the campaign contribution from Gardler, even absent an express statement. See, e.g., United States v. Benjamin, 95 F.4th 60, 68 (2d Cir. 2024) ("[T]he McCormick explicit quid pro quo requirement may be met by implication from the official's and the payor's words and actions and need not entail an express statement."). This evidence included Gardler calling Henon to complain about Verizon and suggesting that Henon put "pressure" on Verizon to cast them in a "negative light," A4282–86, Henon calling Gardler to discuss the campaign solicitation and the Verizon dispute in back-to-back calls, and Gardler

---

behalf of Dougherty and Local 98. United States v. Bryant, 655 F.3d 232, 237 (3d Cir. 2011); United States v. Lacerda, 958 F.3d 196, 225 (3d Cir. 2020).

stating that he secured the campaign contribution by explaining that "[he] kn[e]w what [he could] ask Bobby to do for [CWA]," followed immediately with a request that Henon hold a "public hearing" against Verizon to "make 'em sweat." A4292–96. While Henon argues that the jury should have weighed the evidence differently, we will not disturb a jury's conclusion merely because it could have reached an alternative one. United States v. Caraballo-Rodriguez, 726 F.3d 418, 432 (3d Cir. 2013).[9] Thus, we will also affirm on this ground.[10]

II.    CONCLUSION

Because we see no clear error in the District Court permitting proof of an implicit agreement and we determine that there was sufficient evidence supporting Henon's campaign contribution conviction, we will affirm.

---

[9]    Henon does not dispute that the District Court properly instructed the jury that it must find that there was "an explicit agreement" and that Henon "agreed to exchange the contribution for explicit specified future official action." A4056–57.
[10]    We will also affirm the District Court's imposition of an in personam forfeiture judgment in this case. See United States v. Vampire Nation, 451 F.3d 189, 201–03 (3d Cir. 2006), abrogation on other grounds recognized in Lacerda, 958 F.3d at 216–17.